Elizabeth D. Tate
State Bar No.: 32569
2953 N. 48th Street
Phoenix, AZ 85018-7749
(602) 670-460-4653 (T)
Fax: (480) 935-3746
Attorneyelizabethtate@yahoo.com

*Attorney for Renee Ivchenko*

Diana Day
State Bar No.: 023174
Scottsdale City Attorney's Office
3939 North Drinkwater Blvd.
Scottsdale, Arizona 85251
(480) 312-2405 (T)
legal@scottsdaleaz.gov
*Attorneys for Defendants*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Renee Ivchenko,<br><br>             Plaintiff,<br><br>       vs.<br><br>City of Scottsdale, a municipal corporation, et. al.,<br><br>             Defendants. | Case No. 2:19-cv-05834<br><br>**JOINT CASE MANAGEMENT REPORT** |

Pursuant to the Court's Order Setting Rule 16 Scheduling Conference

(dkt. 22) the parties hereby jointly submit this Rule 26(f)(2) case management

report and proposed discovery plan:

**1.     Parties who attended the Rule 26(f) meeting;**

Elizabeth D. Tate, for Plaintiff and Diana Day, counsel for Defendants City of Scottsdale, Ryan, Treglown, and Dearing attended the Rule 26(f) meeting and jointly developed this Case Management Report.

**2.     List of parties to the case;**

Renee Ivchenko – Plaintiff

City of Scottsdale – Defendant

Officer Brandon Treglown – Defendant

Officer Michael Dearing – Defendant

Detective Sean Ryan - Defendant

**3.     Short Statement of the nature of the case;**

Plaintiff contends:   On April 21, 2018, Plaintiff, Mrs. Ivchenko was severely intoxicated in her home when she  made a baseless call to 911 to report that  her husband, Mr. Ivchenko was abusing her. The Defendant Police Officers arrived to the home, along with their sergeant. Mr. Ivchenko explained Mrs. Ivchenko's condition and history.  Mrs. Ivchenko had called 911 before while intoxicated and each time the officers took her to detox. However, the Defendants seem unfamiliar with the process the City had implemented before and instructed Mr. Ivchenko to leave the home.

Mr. Ivchenko did not want to leave the home because  he knew someone would have to care for his wife who was prone to seizures and

blackouts.  As he prepared to leave, Mrs. Ivchenko asked for permission to say goodbye to her husband and that's when the trouble started.  Defendant Treglown became infuriated by Mrs. Ivchenko's inability to comply with and understand his instructions.  The whole interaction was captured on video which shows Officer Treglown shoving Mrs. Ivchenko two times.   Mrs. Ivchenko asked  the officer, "How can you treat me like that?"  Officer Treglown then falsely asserted that Mrs. Ivchenko had assaulted him. The other two Defendant Officers did nothing to assist Mrs. Ivchenko and were complicit in Treglown's abuse and false arrest.  Clearly, Mrs. Ivchenko was arrested because of her disability.

Mrs. Ivchenko brings a 1983 claim because the Defendant Officers were improperly trained and violated her right to be free from false arrest and peacefully remain in her  home.  Mrs. Ivchenko brings a Rehab Act and  ADA claim because she alleges that she was intentionally discriminated against because of her disability to wit:, alcoholism.   Mrs. Ivchenko seeks compensatory damages and attorney's fees and punitive damages against the individual officers.

Defendant contends: On April 21, 2018, Defendant City of Scottsdale received a telephone call to its 911 Dispatch system from Renee Ivchenko, who claimed that her husband was abusing her.  Defendant police officers Treglown, Dearing, and Ryan were among those dispatched to the scene.

Upon arriving at the house, Officers spoke with Plaintiff Renee Ivchenko and her husband Andrew Ivchenko.  Andrew explained that Renee had a serious drinking problem and was heavily intoxicated.  He had found a hidden bottle of alcohol he poured down the sink in an attempt to stop Renee from drinking. He explained that this upset Renee, and she grabbed his arms and pushed him to make him stop.  Officers observed marks on Mr. Ivchenko's arms consistent with his statements.  Renee claimed that Andrew had grabbed her and pushed her.  Officers noted that Renee had no marks consistent with her statements and that she appeared to be intoxicated.  At this stage, officers had probable cause to arrest Renee for felony domestic violence and were authorized by law to make a mandatory domestic violence arrest.

As part of their investigation activities and community caretaking functions, Officers kept Renee and Andrew separated while Andrew spoke with the Officers prepared to spend the night out of the apartment.  During this time, Renee became increasingly agitated, aggressive, and noncompliant with Officers' requests.  She repeatedly failed to follow commands and attempted to physically evade the Officers' attempts to keep her away from Andrew.  Frustrated, Renee started shouting and shoved shoved Officer Treglown, who took hold of Renee's arms, placed them behind her back, and handcuffed her.  Renee was taken to the police cruiser and transported to jail.  During the ride, Renee maneuvered herself out of

handcuffs and resisted when Officers placed them back on by pulling away and curling her arms to her chest.

Renee was ultimately charged with violating multiple criminal statutes, including the aggravated assault on Officer Treglown, the assault on Andrew, and disorderly conduct.  She entered a diversion program that allowed for the charges to be dismissed.  She has now sued the City and the Officers who responded to her baseless 911 call.  Records demonstrate that Renee has a history of resisting attempts to help her, including multiple previous (but uncharged) assaults on police and fire personnel responding to previous emergencies.

**4.     The jurisdictional basis of the case citing specific statutes;**

This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1331, as the claims arise from alleged violations of federal statutory and constitutional rights, including 42 U.S.C. § 1983 (violation of constitutional rights) and 42 U.S.C. § 12132 (disability discrimination).  The district court has original jurisdiction over this civil action pursuant to 28 U.S.C. § 1343(a)(3).

**5.     Parties that have not been served or have been served and not yet appeared and answered;**

All parties have been served.

The Maricopa County Defendants have been dismissed with prejudice and have requested to be excluded from further service in this matter.

6.   **Plans to add parties or amend the pleadings;**

Plaintiff will file any amendments her complaint on or before July 2, 2020.

The parties have already met and conferred to discuss the factual and legal deficiencies in Plaintiff's Amended Complaint that are potentially curable by amendment in anticipation of Defendants filing a motion for judgment on the pleadings and/or motion to dismiss.

**7.   A list of contemplated motions and statement of issues to be decided;**

Plaintiff:  None.

Defendants:

1.   *Motion for Judgment on the Pleadings or Motion to Dismiss.* Depending on whether Plaintiff chooses to amend her complaint, Defendants intend to file a motion for judgment on the pleadings, motion to dismiss, and/or motion for summary judgment to resolve the issue of whether Plaintiff's Amended Complaint states a claim for which relief may be granted based on (1) Plaintiff's failure to identify with specificity the facts allegedly giving rise to any potential liability with respect to either the Officer Defendants or the City Defendant and (2) Plaintiff's failure to articulate any

clearly established constitutional rights alleged to have been violated by each individual defendant. Defendants intend to assert all of the defenses raised in their Answer and MIDP disclosures, including failure to state a claim, qualified immunity, probable cause, and other defenses that may be available once Plaintiff's Second Amended Complaint is filed.

2. *Early Motion for Summary Judgment on Qualified Immunity **and** Motion for Summary Judgment Following Close of Discovery (if applicable).* Defendants respectfully request that the Court permit a motion for summary judgment to be filed on the issue of qualified immunity early in the case following very limited discovery, and—should the case survive—that Defendants be permitted to file an additional motion for summary judgment at the close of discovery if warranted. The reason for this request is that Plaintiff has yet to identify with particularity the alleged constitutional rights that the Defendants are alleged to have violated, making summary judgment on the grounds of qualified immunity likely. Allowing one early motion for summary judgment on the grounds of qualified immunity will serve the interests of justice and judicial economy. *See Hunter v. Bryant*, 502 U.S. 224, 227, 112 S. Ct. 534, 536, 116 L. Ed. 2d 589 (1991) ("[W]e repeatedly have stressed the importance of resolving immunity questions at the earliest possible stage in litigation") *Crawford-El v. Britton*, 523 U.S. 574, 599–600, 118 S. Ct. 1584, 1597, 140 L. Ed. 2d 759 (1998) (trial court can manage

discovery to facilitate prompt and efficient resolution of the lawsuit, including giving "priority to discovery concerning issues that bear upon the qualified immunity defense."); *see also Prostrollo v. City of Scottsdale,* No. CV-12-1815-PHX-SMM, 2013 WL 11394250 (D. Ariz. Oct. 9, 2013) (staying discovery to allow for the resolution of qualified immunity on summary judgment).

Plaintiff has refused to stipulate to Defendants' request to allow early briefing on the issue.  In the alternative, should the Court permit early briefing on the issue, Plaintiff asserts that depositions of the Defendants and their supervisor who was present on the scene would be necessary to oppose any Motion for Summary Judgment based on qualified immunity.

3.   *Motions Regarding Witness Andrew Ivchenko.*   Defendants anticipate that there may be issues regarding claims of privilege with relation to Andrew Ivchenko but are unable to determine with any additional specificity whether these will become necessary.  Andrew Ivchenko is a victim of Plaintiff Renee Ivchenko's domestic violence and represented her in filing a notice of claim against the City of Scottsdale.  If discovery is permitted to proceed, this mixing of roles may implicate matters of attorney-client privilege, spousal privilege, and conflict of interest for Andrew Ivchenko, and there may be a need to have these questions resolved by the

Court.   Plaintiff's counsel affirms that Andrew Ivchenko is not her client because he is not a plaintiff in this lawsuit.  Mr. Ivchenko is a fact witness.

**8.     Whether the case is suitable for settlement conference;**

The parties agree the case is not suitable for reference to a United States Magistrate Judge for a settlement conference at this time.

**9.     Status of related cases;**

None.

**10.    Discussion of ESI discovery;**

The parties have held discussions regarding the preservation and production of ESI and have made the following agreements (1) officer on-body camera footage and 911 recordings will be provided in commonly viewable electronic formats, (2) any emails required to be disclosed or requested pursuant to a request for production will be produced in .pdf format, and (3), Defendants will preserve any emails still existing to or from Officers Treglown, Ryan, and Dearing that contain the words "Ivchenko" or "18-08959" from a period of time between 4/21/2018 and 4/20/2020.

**11.    Discussion of claims of privilege or work product;**

The parties have not made any agreements regarding asserting claims of privilege of protection as trial-preparation material after information is produced.

**12.    Application of Federal Rule of Evidence 502(d);**

The parties do not anticipate seeking an order under Federal Rule of Evidence 502(d).

### 13.   Compliance with MIPD

Plaintiff does not allege that there are any deficiencies in Defendants' MIDP disclosure of May 28, 2020.

Defendants allege that there are deficiencies in Plaintiff's MIDP disclosure of June 8, 2020.  Defendants provided notice to Plaintiff of the deficiencies on June 8, 2020, the day of receipt.  Plaintiff has provided notice that she intends to submit an updated MIDP on or before June 15, 2020.  Defendants' objections to the current MIDP are preserved below pursuant to the Court's order.[1]  (Dkt. 22).

Defendants' Objections:  Pursuant to the Court's order, Defendants assert the following objections to Plaintiff's current MIDP disclosure (attached) is deficient for the following reasons

- For all witnesses, the extremely brief descriptions of anticipated testimony do not contain "a fair description of the nature of the information each such person is believed to possess" that would enable Defendants to ascertain whether these witnesses have any information

---

[1] The Case Management Report shall contain "[a] discussion of the parties' compliance to date with the MIDP, whether any issues have arisen under the MIDP, and, if issues have a risen, a description of those issues so the Court may resolve them at the Rule 16 conference."  (Dkt. 22 at 4).

relevant to this case or enable them to determine whether pursuing discovery from these individuals is sufficiently relevant to justify the burden or expense.

- There is no contact information for nonparty witness Andrew Ivchenko.
- The list of documents contains a reference to "Plaintiff's medical records" without any additional detail that would permit Defendants to discover what documents Plaintiff is referring to and whether they are relevant to any issues in this lawsuit.  Additionally, Plaintiff has failed to provide or make available any "medical records" with the MIDP response.
- Plaintiff did not disclose the 911 recordings in her possession (which are not in possession of Defendants due to records retention schedules), as she produced only .xspf files which are playlist shortcuts which do not contain the actual media.  Pursuant to the parties' agreements, these should be produced in a commonly playable media file format, such as mp3, .mp4, or .wav.
- Plaintiff does not state the legal theories or facts giving rise to her claims.  The only facts alleged are a description of the incident. Defendants are unable to ascertain **what conduct** from **each Defendant** would allegedly give rise to liability.  This does not put

Defendants on notice of what actual conduct is at issue as to any individual defendant or what legal theories are alleged that would give rise to any viable liability claims under either 42 U.S.C. § 1983 or the Rehabilitation Act or the Americans with Disabilities Act.  Plaintiff fails to articulate with sufficient specificity what clearly established right each Defendant is alleged to have violated.

Plaintiff's Response:

- Plaintiff responds that she has requested the exact format that the City of Scottsdale produced the videos from the Ivchenkos and will supplement shortly. Plaintiff has requested medical records and will provide copies to Defendants as soon as available to Plaintiff.

- Plaintiff responds that she has updated the MIPD to include Mr. Ivchenko's address  and the issue of whether undersigned counsel represents him is moot.

- Plaintiff has requested time to update the  legal theories of the MIPD Response and will supplement by June 15th, 2020, the date Plaintiff believes MIPD Responses are due.

- Plaintiff understand that discovery disputes are disfavor by the Court and that she  has been diligently working to iron out the issues but

Defendant's counsel has not extended requisite professional courtesies.

**14.   Discussion of necessary discovery;**

a.   <u>Plaintiff's Statement</u>: Plaintiff would  like to take the depositions of the Defendants and their supervisor to defend against any Motion for Summary Judgment on the issues of qualified immunity.

<u>Defendants' Statement</u>:

Phase I:   Defendants would like to take limited depositions of Plaintiff Renee Ivchenko and nonparty witness Andrew Ivchenko regarding the issue of their recollection of the events giving rise to this lawsuit, and then to have a stay of discovery to enable the filing of a motion for summary judgment on the issue of qualified immunity.  This is proportional to the needs of the case as stated above.  Both witnesses are believed to be located in Maricopa County.

Phase II:   Should the case proceed past the early motion for summary judgment, it is difficult to ascertain the need for any additional discovery based on the limited information regarding the nature of Plaintiff's liability and damages claim received thus far.   Defendants anticipate taking the depositions of any fact witnesses with relevant information to the case and any expert witness retained by Plaintiff if applicable.  Defendants would take the depositions of Renee Ivchenko and Andrew Ivchenko on damages

issues.   All of these depositions should take place in Maricopa County. Should the case proceed past the qualified immunity stage, Defendants intend to retain expert witnesses, who may or may not be located within the District of Arizona.

b.     The parties do not propose any changes to the discovery limitations set forth in the Federal Rules of Civil Procedure, with the exception that Defendants propose adjourning the depositions of Renee Ivchenko and Andrew Ivchenko and reopening the depositions to include damages issues following the Court's ruling on summary judgment.

c.     The parties agree that individual depositions shall be limited to 7 hours each.  Defendant proposes that each party be limited to 30 total hours for depositions based on the relative simplicity of this case.

**15.   MIPD Discovery Responses.**

Plaintiff served MIPD disclosures on June 8, 2020. Defendant served MIPD disclosures on May 30, 2020.

**16.   Specific dates for the following**

**a. Completion of fact discovery**

Deadline for fact discovery: June 30, 2021.

**b. disclosure of expert testimony under Rule 26(a)(2)(C) Federal Rules of Civil Procedure**

Deadline for Plaintiff's expert disclosures:  March 31, 2021.

Deadline for Defendants' expert disclosures:  April 30, 2021.

### c. Expert Depositions

Deadline for expert depositions June 30, 2021.

### d. Deadline for face-to-face good faith settlement talks

Deadline for settlement talks: April 30, 2021.

### e. filing dispositive motions; and filing of any other pretrial motions (excluding motions related to the conduct of trial, e.g. motions in limine, which are properly directed to the district judge who will try the case upon withdrawal of the reference of the case to the magistrate judge;

If Plaintiff files another Amended Complaint on or before July 1, 2020, deadline for motion to dismiss:  August 1, 2020.

If Plaintiff does not file an Amended Complaint, deadline for early motion for summary judgment (including qualified immunity):  September 15, 2020 (following limited depositions of Renee Ivchenko and Andrew Ivchenko).

Deadline for all parties to file dispositive motions:  July 31, 2021.

### 17.  Jury trial

The parties' request a jury trial.

### 18.  Prospects for settlement

The prospects of settlement are poor, as Defendants assert that this case appears to be meritless.

**19.   Other matters**

Defendants request that the Court permit only limited discovery (the initial depositions of Renee Ivchenko and Andrew Ivchenko) prior to the resolution of the early summary judgment motion on the issue of qualified immunity, and that all remaining discovery be stayed until the motion is ruled on.

RESPECTFULLY SUBMITTED this  June 8, 2020.

By:

/s/ Elizabeth D. Tate
Elizabeth D. Tate

Attorney for Plaintiff

SCOTTSDALE CITY ATTORNEY'S OFFICE

/s/ Diana Day
Diana Day
Attorneys for Defendants

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## **CERTIFICATE OF SERVICE**

I hereby certify that on June 8, 2020, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic filing.

/s/ Elizabeth D. Tate

_____
Elizabeth D. Tate