Elizabeth D. Tate AZ Bar No. 032659
Elizabeth D. Tate Attorney at Law
2953 N. 48th Street
Phoenix, AZ 85016
Telephone (602) 670-4653
Fax (480) 935-3746
Attorney for Plaintiff Renee Ivchenko

**IN THE UNITED STATES DISTRICT COURT FOR THE**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| Renee Ivchenko, a married individual. | Case No.: 2:19cv5834 PHX ROS |
| Plaintiff, | **SECOND AMENDED COMPLAINT** |
| vs. | **JURY TRIAL DEMANDED** |
| City of Scottsdale, a municipal corporation; | |
| Officer Brandon Treglown, in his individual capacity | |
| Officer Sean Charles Ryan, in his individual capacity, | |
| Officer Thomas Michael Dearing, in his individual capacity, | |
| ~~Maricopa County, a governmental entity~~ ~~Sheriff Paul Penzone, in his official and individual capacities,~~ | |
| Defendants. | |

-1-

COMES NOW, Plaintiff Renee Ivchenko, by and through her attorney of record, Elizabeth Tate, and hereby submits her First Amended Complaint against Defendants, and each of them, and alleges as follows:

///

///

///

## NATURE OF THE ACTION

**1.** This is an action brought by Plaintiff for compensatory, injunctive, and declaratory relief and damages against the City of Scottdale and its Police Officers Brandon Treglown, S. Ryan and T. Dearing., ~~and Maricopa County and Sheriff Paul Penzone~~. Plaintiff's Fourth Amendment and Fourteenth Amendment rights under the U.S. Constitution were violated by these individual officers and individuals ~~and~~ and the City of Scottsdale , through 42 U.S.C. Section §1983 to act pursuant to a policy to fail to train its officers in dealing with disabled citizens. The City of Scottdale violated the Americans with Disabilities Act, 42 U.S.C. § 12132 and the Rehabilitation Act when it arrested Plaintiff for her disability and failed to accommodate it. ~~Maricopa County and Sheriff Paul Penzone violated 42 U.S.C. Section §1983 including Plaintiff's rights under the Fourth Amendment when jail employees collected an unauthorized DNA sample from Plaintiff pursuant to an unconstitutional policy.~~

**PARTIES, JURISDICTION AND VENUE**

**2.** At all times relevant hereto to this action, Plaintiff, Renee Ivchenko, was a married woman living in Phoenix, Arizona with her husband, Andrew Ivchenko. Renee Ivchenko suffers from the disability of alcoholism and seizures that affects her major life activities of thinking and concentration.

**3.** Upon information and belief, always relevant hereto this action, Defendant, Officer Brandon Treglown (hereinafter "Treglown"), was a resident of Phoenix, Arizona and engaged in a policy of unlawful arrest without probable cause.

**4.** Upon information and belief, always relevant hereto this action, Defendant, Officer S. Ryan (hereinafter "Ryan"), was a resident of Arizona and engaged in a policy of unlawful arrest without probable cause.

**5.** Upon information and belief, always relevant hereto this action, Defendant, Officer T. Dearing (hereinafter "Dearing"), was a resident of Arizona and engaged in a policy of unlawful arrest without probable cause.

**6.** Upon information and belief, always relevant hereto this action, the Defendant, City of Scottsdale, is a municipal corporation that has a Police Department established for serving and protecting residents of Scottsdale. City of Scottsdale is liable for the actions of its police officers, Defendants Treglown, Ryan and Dearing, who violated Mrs. Ivchenko's Fourth and Fourteenth

Amendment rights.  The Defendant Officers were inadequately trained in affording citizens with disabilities their rights and effectuating proper arrests.  City of Scottsdale has a wide policy of failing to train its officers in these areas, including a failure to train the named officer Defendants. City of Scottsdale also has a duty under the Americans with Disabilities Act and Rehabilitation Act as a public establishment to make its services available to people with disabilities and to make reasonable accommodations for such persons. City of Scottsdale receives financial assistance or funding from federal government programs.

7.  Upon information and belief, always relevant to this action, Maricopa County is a governmental entity that operates the Maricopa County Jail.  Sheriff Penzone is an elected official, county officer and chief policy maker for the Maricopa County Jail.  Maricopa County is responsible for Sheriff Penzone's jail policies.

8.  Upon information and belief, always relevant hereto this action, Sheriff Paul Penzone is a law enforcement officer elected by the citizens of Maricopa County in 2016.  Sheriff Penzone is a former sergeant in the Phoenix Police Department.  Sheriff Penzone is sued in his official and individual capacities.  Sheriff Penzone is responsible for the Maricopa County's jail policy of collecting DNA without probable cause and in violation of Arizona law.

///

///

//

**FACTUAL BACKGROUND**

9.7.   On April 21, 2018, Renee Ivchenko was severely intoxicated in her home while her husband, Andrew Ivchenko, was making dinner. Mrs. Ivchenko suffers from alcoholism. Mr. Ivchenko discovered Mrs. Ivchenko's vodka and poured it down the kitchen drain. Upset, Mrs. Ivchenko called 911 to make a report of domestic violence. The Defendant police officers arrived along with their supervisor, Sergeant P. Michael (hereinafter "Sergeant Michael"). These police officers knew that Mrs. Ivchenko suffers from alcoholism having had four other interactions with her during the preceding 10 months.

10.8. The Defendant police officers soon determined that Mrs. Ivchenko's call for domestic violence was baseless. Mr. Ivchenko explained to Sergeant Michael Mrs. Ivchenko's dire condition and high seizure risk and history, that she had not harmed him and asked him to exercise protective custody under A.R.S. § 36-2026 to take Mrs. Ivchenko to a hospital or a detox facility. Mr. Ivchenko suggested Community Bridges in Mesa. Mr. Ivchenko explained to the officers that the police department had invoked this statutory provision before with Mrs. Ivchenko. Sergeant Michael seemed unfamiliar with the process and made it

clear that he was not pleased with having to deal with Mrs. Ivchenko again.  Mr. Ivchenko is a licensed attorney in Arizona, and implored the officers not to turn Mrs. Ivchenko's medical condition and health crisis into a criminal matter.

~~11.~~**9.** Instead of invoking the involuntary commitment procedure, Officer Treglown, a rookie officer, began lecturing Mrs. Ivchenko asking her whether she has a "drinking issue".  Due to her disability, Mrs. Ivchenko was unable to respond appropriately or comprehend his instructions.  With no evidence of a crime being committed, the Defendant Officers then instructed Mr. Ivchenko to leave his home which he did not want to do as someone needed to care for Mrs. Ivchenko due to her physical and mental condition.  Reluctantly, Mr. Ivchenko prepared to leave the home.  Mrs. Ivchenko then calmly asked permission of the Defendant Officers to say goodbye to Mr. Ivchenko.  Rather than permit Mrs. Ivchenko's simple request, Officer Treglown denied the request and continuously agitated Mrs. Ivchenko, at one point aggressively claiming, "This is our property now."  The situation was peaceful and fully under control until Mrs. Ivchenko attempted to shake the officers' hand.  Officer Treglown refused her handshake and pushed Mrs. Ivchenko, who immediately protested.  Officer Treglown, who became increasingly incensed by Mrs. Ivchenko's confusion and questioning, lost his composure, telling Mrs. Ivchenko, "Don't argue with me!"  Because Mrs. Ivchenko could not respond appropriately, Officer Treglown became infuriated

and pushed Mrs. Ivchenko a second time. Mrs. Ivchenko asked Officer Treglown, "How can you push me around like that?" Seeing the circumstances, Sergeant Michael and the other Defendant officers made no attempt to rein Officer Treglown in. Officer Treglown then asked for assistance from Defendant Ryan who stated, "We can't keep coming out here."

12.10. The Defendant Officers and Sergeant Michael did nothing to take into account or otherwise accommodate Mrs. Ivchenko's disability. Rather, they continued to agitate Mrs. Ivchenko and enflame the situation. Mrs. Ivchenko became even more agitated and berated Officer Treglown. Officer Treglown flew into a rage and screamed in response telling her, "Calm down!" and then tried to detain Mrs. Ivchenko rather than keep his distance and de-escalate the situation. As Mrs. Ivchenko attempted to move away from Officer Treglown, a towering, out of control, screaming, armed man who had already struck her twice, Officer Treglown falsely asserted that Mrs. Ivchenko had assaulted him. Mrs. Ivchenko retorted, "You calm down." Officer Treglown grabbed Mrs. Ivchenko by the right arm. Officer Ryan grabbed Mrs. Ivchenko by the left arm. Officer Dearing guarded the door so that no one could enter or exit. The officers then handcuffed Mrs. Ivchenko. Once handcuffed, Mrs. Ivchenko immediately asked the Defendant officers why they were arresting her and denied pushing Officer Treglown. Mrs. Ivchenko continually pleaded for help. None of the Defendant

officers or Sergeant Michael assisted Mrs. Ivchenko and Mr. Ivchenko stood by helpless to do anything.  The Defendant officers led Mrs. Ivchenko out of her home in her bare feet and placed her in a squad car and took her to the Maricopa County Jail.  There she was booked and charged with aggravated assault on a peace officer along with two other misdemeanors that were never charged.

~~13.~~11.    On the way to the jail, Mrs. Ivchenko experienced blackouts and lost recollection of the events that transpired that led to her arrest.  The Defendant officers, oblivious to Mrs. Ivchenko's dire physical and mental condition, ignored her pleas and calmly listened to background music.  Mrs. Ivchenko spent the night in the Maricopa County Jail, cold and without socks or shoes, and feared for her life while suffering from dangerous alcohol withdrawal symptoms that had led to seizures in the past.  Mrs. Ivchenko was released from the jail early the following morning after her arraignment.  With the weight of the Defendants Ryan and Dearing supporting Defendant Treglown's false assertions against her, Mrs. Ivchenko had no choice but to enter into a Felony Pretrial Intervention Program on May 15, 2018.  Defendants Ryan and Dearing complicatedly agreed with Defendant Treglown's lie that Mrs. Ivchenko had assaulted him.  Mrs. Ivchenko retained counsel.  Ultimately, the charge against Mrs. Ivchenko was dismissed by prosecution motion on September 25, 2018.

~~14.   Upon booking Mrs. Ivchenko in the Maricopa County Jail, jail staff used a cheek swab to take a sample of Mrs. Ivchenko's DNA. Jail staff acted pursuant to policy implemented by Defendant Sheriff Penzone and Maricopa County in violation of state law and the Fourth Amendment. A.R.S. § 13-610 provides that the taking of a DNA sample applies only to those convicted of any felony or those arrested for enumerated felonies, inter alia, sex crimes, burglary and listed violent offenses. Mrs. Ivchenko had no felony convictions, nor was she arrested for such listed offenses. Aware that the law had been broken, Mrs. Ivchenko retained counsel who had her DNA sample expunged. The court order dated January 10, 2019 required each agency and law enforcement office having Mrs. Ivchenko's DNA sample to file a sworn affidavit with the Clerk of Court, and her attorney, to the effect that the DNA sample or specimen, or DNA records or reports, have been expunged. Defendants Sheriff Penzone and Maricopa County appear to have ignored the court order.~~

///
///
///

**(42. U.S.C. § 1983 - Unlawful Arrest, Excessive Force, Failure to Intervene and Conspiracy in violation of the Fourth and Fourteenth Amendments) As to City of Scottsdale, and Defendants Treglown, Ryan and Dearing**

~~15.~~**12.** Plaintiff incorporates by this reference each allegation previously made in this Complaint, as if fully set forth herein.

~~16.~~**13.** The individual Defendants to this claim, always relevant hereto, were acting under the color of state law in their capacities as City of Scottsdale police officers and their acts and omissions were conducted within the scope of their official duties or employment.

~~17.~~**14.** At the time of the complained of events, Plaintiff had a clear constitutional right under the Fourth Amendment to be secure in her home without unreasonable interference with privacy within her home by the Defendant police officers.

~~18.~~**15.** Plaintiff also had a clear constitutional right under the Fourteenth Amendment to be free from unlawful arrest and the use of excessive force and be afforded due process.

~~19.~~**16.** Defendants knew or should have known these rights at the time of the complained of conduct as they were clearly established at the time.

~~20.~~**17.** Defendants' arrest of Mrs. Ivchenko without probable cause, as described herein, was objectively unreasonable considering the facts and circumstances confronting them and violated the Fourth Amendment rights of Plaintiff.

21.18.    Defendants' actions to arrest Plaintiff, as described herein, were also malicious and/or involved reckless, callous, and deliberate indifference to Plaintiff's federally protected rights.  The Defendants' provocation of Plaintiff who had a right to be left alone peacefully in her home shocks the conscience and violated Plaintiff's Fourth and Fourteenth Amendment rights.

22.19.    The individual Defendants refused to use peaceful mechanisms in dealing with Plaintiff and instead isolated Plaintiff from her private source of aid. As a result of the Defendant police officers' actions, Plaintiff felt trapped and severely fearful of the Defendant police officers and became increasingly despondent about the situation.

23.20.    Defendant Treglown further escalated the situation by twice pushing Plaintiff without reason and then falsely claimed Plaintiff had assaulted him.  The Defendants Ryan and Dearing, knowing no assault had occurred, had a duty to intervene when Defendant Treglown violated Plaintiff's constitutional rights, failed to intervene and assisted Defendant Treglown in arresting Plaintiff without probable cause.

24.21.    Defendant police officers engaged in a conspiracy to deprive Plaintiff of her constitutional rights by manipulating Plaintiff's disability so that they could affect an arrest, positioned themselves so that their body cameras

would likely not record any incident with Plaintiff, and filing a false and misleading police report alleging a felony assault against Plaintiff.

~~25.~~**22.**     Defendants failed to take reasonable steps to protect Plaintiff from unlawful arrest and the use of excessive force despite being able to do so and therefore each are liable for the injuries and damages resulting from the unreasonable and conscience shocking arrest by each Defendant.

~~26.~~**23.**     The acts and/or omissions of the Defendants were the moving forces behind Plaintiff's injuries.

~~27.~~**24.**     As a direct and proximate result of Defendants' unlawful conduct, Plaintiff suffered emotional injuries, and other damages and losses as described herein entitling her to compensatory and special damages in amounts to be determined at trial.  As further result of the Defendants' unlawful conduct, Plaintiff is entitled to general damages in amounts to be established at trial.

~~28.~~**25.**     In addition to compensatory, economic, consequential and special damages, Plaintiff is entitled to punitive damages against Defendants Treglown, Ryan and Dearing under 42. U.S.C. § 1983, in that the Officer Defendants acted maliciously, willfully or with reckless or wanton disregard of the constitutional rights of Plaintiff.

**(Violation of 42 U.S.C.S. § 12132, the Rehabilitation Act and Failure to Train) as to City of Scottsdale**

**29.26.** Plaintiff incorporates by this reference each allegation previously made in this Complaint, as if fully set forth herein.

**30.27.** Plaintiff was a qualified individual with a disability to wit: alcoholism and a history of seizures who was subjected to disability discrimination by City of Scottsdale's police officers, Treglown, Ryan and Dearing who had tired of assisting Plaintiff because she is an alcoholic. City of Scottsdale's officers could have made the reasonable accommodations of permitting Plaintiff to stay in her home with her husband after she made a baseless 911 call and/or invoking an involuntary commitment as requested by her husband. Rather than assisting Plaintiff in her dire physical and mental state, the Defendant City of Scottsdale's officers completely lost their composure and arrested Plaintiff without probable cause. This resulted in Plaintiff being transported to the Maricopa County Jail with hardened criminals and limited medical support, which placed Plaintiff's life in jeopardy from an alcohol withdrawal seizure or other health issue. The Defendant City of Scottsdale's officers' actions were malicious and/or involved reckless, callous, and deliberate indifference to Plaintiff's federally protected rights.

~~31.~~**28.**    Defendant City of Scottsdale's officers wrongfully arrested Plaintiff because of her disability not because she had committed any crimes. Prior to the arrest, Defendant City of Scottsdale's officers failed to accommodate Plaintiff's disability, in that the officers had both the time and opportunity to evaluate the situation and apply the accommodations suggested by Mr. Ivchenko, while de-escalating matters rather than enflaming them, communicating reasonably with Mrs. Ivchenko, or calling for specialized help from officers trained to interact with someone with Mrs. Ivchenko's disability. Once arrested, Defendant City of Scottsdale's officers failed to accommodate Plaintiff's disability by permitting her to blackout with a severe, life-threatening blood alcohol content (BAC) of around 0.30% and ignoring the obvious need for medical treatment, by allowing her to remain in her home with her husband who could monitor her condition and/or involuntarily committing her to a hospital or detoxification center.

~~32.~~**29.**    Because the Defendant Officers and their supervisor Sergeant Michael knew or should have known of Plaintiff's disability and did not reasonably accommodate her, the City of Scottsdale is liable.

~~33.~~**30.**    Defendant City of Scottsdale failed to properly train their police officers for peaceful encounters with disabled persons, and such failure resulted in discrimination against Plaintiff.  Defendant City of Scottsdale failed to properly

-14-

train its police officers to recognize symptoms of disabilities, and failed to modify its police policies, practices, and procedures to prevent discriminatory treatment of the disabled.

~~34.~~31.   The City of Scottdale is a public entity charged with the responsibly under Title II of the Americans with Disabilities Act and the Rehabilitation Act to comply with public anti-discrimination laws, and to properly train the Defendant police officers to reasonably accommodate the Plaintiff's disability.

~~**(Violation 42 U.S.C. § 1983 - Unreasonable Search and Seizure) As to Defendant's Maricopa County and Sheriff Penzone)**~~

~~35.   Plaintiff incorporates by this reference each allegation previously made in this Complaint, as if fully set forth herein.~~

~~36.   Defendants Maricopa County and Sheriff Penzone acted on a policy of collecting DNA samples from arrestees in situations not warranted by Arizona law. Once DNA is collected Defendants Maricopa County and Sheriff Penzone are under no legal obligation to destroy such samples and place the burden to expunge the DNA samples on each individual citizen. The illegal collection of Plaintiff's DNA sample is calculated to violate Plaintiff's rights and the rights of~~

~~others under Arizona law and the U.S. Constitution under the Fourth and Fourteenth Amendment.~~

~~**37.** The individual Defendant Sheriff Penzone, party to this claim and always relevant hereto, was acting under the color of state law in his capacities as an officer of Maricopa County and his acts and omissions were conducted within the scope of his official duties or employment.~~

~~**38.** At the time of the complained of events, Plaintiff had a clear constitutional right under the Fourth Amendment to be free from unlawful search and seizure of her DNA.~~

~~**39.** Defendants Maricopa County and Sheriff Penzone knew or should have known these rights at the time of the complained of conduct as they were clearly established at the time.~~

~~**40.** Defendants' collection of Plaintiff's DNA sample without probable cause, as described herein, was objectively unreasonable considering the facts and circumstances confronting them and violated the Fourth Amendment rights of Plaintiff.~~

~~**41.** Defendant Penzone's actions to collect Plaintiff's DNA, as described herein, was malicious and/or involved reckless, callous, and deliberate indifference to Plaintiff's federally protected rights. The Defendants violation of~~

-16-

~~Plaintiff's right to DNA privacy shocks the conscience and violated Plaintiff's Fourth and Fourteenth Amendment rights.~~

~~**42.** Defendant Penzone is an official policy maker of Maricopa County who ordered the policy of collecting DNA samples in violation of Arizona law. The Defendants knew that Plaintiff had no felony convictions and had only been arrested for a minor assault on a peace officer, not for any statutorily enumerated offense that warrants a DNA taking under Arizona law.~~

~~**43.** Defendants failed to take reasonable steps to protect Plaintiff from unlawful search and seizure of her DNA and therefore each are liable for the injuries and damages resulting in the unreasonable and conscience shocking DNA collection by each Defendant.~~

~~**44.** The acts and/or omissions of the Defendants were the moving forces behind Plaintiff's injuries.~~

~~**45.** As a direct and proximate result of Defendants' unlawful conduct, Plaintiff suffered emotional injuries, and other damages and losses as described herein entitling her to compensatory and special damages in amounts to be determined at trial. As further result of the Defendants' unlawful conduct, Plaintiff is entitled to general damages in amounts to be established at trial.~~

~~**32.** In addition to compensatory, economic, consequential and special damages, Plaintiff is entitled to punitive damages against Defendant Penzone~~

~~under 42 U.S.C. § 1983, in that Defendant Penzone acted maliciously, willfully or with reckless or wanton disregard of the constitutional rights of Plaintiff.~~

~~46.~~

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury on all her claims, pursuant to the U.S. Constitution's Seventh Amendment and the Federal Rules of Civil Procedure Rule 38 (a,b).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff reserves the right to amend this Complaint at the time of trial to include all items of damages not yet ascertained, prays judgment against the Defendants, and each of them, as follows:

1. An order awarding Plaintiff actual and compensatory damages for violations of civil rights, disability discrimination and restitution in an amount according to proof at time of trial;

2. An order awarding Plaintiff actual, punitive and compensatory damages in compensation for unlawful arrest and search and seizure, excessive force, failure to intervene, conspiracy, disability discrimination and failure to train.

Plaintiff does not seek punitive damages against Defendants City of Scottsdale and ~~Maricopa County;~~

3. An order awarding Plaintiff's reasonable attorney's fees and costs;

4. An order awarding Plaintiff prejudgment interest according to proof; and

5. For such other and further relief as the Court deems just and proper.

DATED this <ins>July 25, 2020 A</ins>~~November 19, 2019~~

By: /s/ Elizabeth D. Tate
_____
*Attorney for Plaintiff*

-19-