**SCOTTSDALE CITY ATTORNEY'S OFFICE**
Diana Day (SBN: 023174)
3939 North Drinkwater Boulevard
Scottsdale, Arizona  85251
(480) 312-2405 (T)
legal@scottsdaleaz.gov

Attorneys for Defendants City of Scottsdale,
Officer Treglown, Detective Ryan, and Officer Dearing

### IN THE UNITED STATES DISTRICT COURT FOR THE

### DISTRICT OF ARIZONA

| | |
|---|---|
| Renee Ivchenko, a married individual,<br><br>Plaintiff,<br><br>vs.<br><br>City of Scottsdale, et al.<br><br>Defendants. | Case No. 2:19-cv-05834-ROS-DMF<br><br>**CITY DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT (DOC. 35)** |

Defendants through undersigned counsel respectfully request that the Court dismiss Plaintiff's Second Amended Complaint ("SAC") (Doc. 35) for failure to state a claim. *See* Rule 12(b)(6), Fed. R. Civ. P.  This motion is supported by the following Memorandum of Points and Authorities, exhibits attached hereto, by certification of counsel of conferral, and by the record.

### MEMORANDUM OF POINTS AND AUTHORITIES

**I.  INTRODUCTION**

Defendants are the City of Scottsdale and three of its police officers, Brandon Treglown, Sean Ryan, and Thomas Dearing. Plaintiff, Renee Ivchenko, is a Scottsdale resident who suffers from alcoholism. Mrs. Ivchenko called 911 to falsely accuse her husband of domestic violence in retaliation after he poured her vodka down the kitchen drain. Mrs. Ivchenko was intoxicated and agitated at the officers responding to her call. She assaulted Officer Treglown, who arrested

her. During the encounter and arrest, Mrs. Ivchenko was subjected to *de minimis* contact with officers that caused her no pain or physical injury. Mrs. Ivchenko now brings the present lawsuit for numerous federal claims arising out of the Fourth Amendment, Fourteenth Amendment, Americans with Disabilities Act and Rehabilitation Act (hereinafter "ADA/RA"). The lawsuit is built entirely around a flawed legal premise: that officers arresting Mrs. Ivchenko for her crimes were required to accommodate her disability by not arresting her at all.

As discussed in section III.B. below, all but one of the claims fail based on a legal analysis of the four corners of the SAC, even with liberal pleading standards and a presumption of truth. The only claim that the SAC even plausibly articulates is a 42 U.S.C. § 1983 claim against the arresting officer for excessive force in violation of the Fourth Amendment. As discussed in section III.C. below, qualified immunity bars that remaining claim. Although qualified immunity ordinarily requires a factual analysis, it is appropriate to resolve it here because this case presents a purely legal question: is there any authority that clearly establishes a constitutional injury resulting from the use of unnecessary *de minimis* force that causes no physical injury. Taken together, dismissal of all claims against all defendants is warranted under Rule 12(b)(6), Federal Rules of Civil Procedure.

## II.   FACTUAL BACKGROUND[1]

### A.   Scottsdale Police Encounter Mrs. Ivchenko.

#### 1.   *Mrs. Ivchenko Assaults Her Husband and Makes a False 911 Call.*

Mrs. Ivchenko suffers from alcohol addiction, a disability. (Doc. 35 ¶1) On April 21, 2018, Mrs. Ivchenko was "severely intoxicated." (Doc. 35 ¶7) Nonparty Andrew Ivchenko, Mrs. Ivchenko's husband, upset her that day by pouring her vodka down the kitchen drain. (Doc. 35 ¶¶7-8) In retaliation, Mrs. Ivchenko called 911, claimed that her husband was violent toward her, and requested that the police to come to her home. (Doc. 35 ¶7) Mrs. Ivchenko admits now that the 911 call was "baseless." (Doc. 35 ¶8)

---
[1] Should the case proceed past the motion stage, Defendants will be contesting the accuracy of the SAC's factual claims.

2

In response to Mrs. Ivchenko's call, Scottsdale Police Officers Treglown, Dearing, and Ryan went to Mrs. Ivchenko's apartment, along with a supervisor, nonparty Sergeant Michael. The police report[2] indicates that both spouses claimed to have been assaulted by the other, and Mr. Ivchenko showed officers red scratches on both his arms. (Ex. 1 at 4) While the SAC claims that Mr. Ivchenko told officers that Mrs. Ivchenko "had not harmed him," it also acknowledges that officers were trying to keep the two separated. (Doc. 35 ¶¶8-9) Officers eventually asked Mr. Ivchenko to leave Mrs. Ivchenko's home.[3] (Doc. 35 ¶9)

Mrs. Ivchenko spoke to the officers while appearing to be severely intoxicated. (Doc. 35 ¶7) The SAC admits that she was "unable to respond appropriately or comprehend [officer] instructions." (Doc. 35 ¶9) Her alcoholism impairs her ability to "think[] and concentrat[e]." (Doc. 35 ¶1) She became "agitated" at various points throughout her discussions with the officers. (Doc. 35 ¶10)

    2.    <u>Officer Treglown "Pushes" Mrs. Ivchenko Twice.</u>

While Mrs. Ivchenko was separated from her husband by the officers, she decided that she wished to speak with him, but the officers would not allow it. (Doc. 35 ¶10) She then approached Officer Treglown and tried to shake Officer Treglown's hand, and he pushed her away. (Doc. 35 ¶9) After the first push, Mrs. Ivchenko "immediately protested" and exhibited "confusion and questioning" and "could not respond appropriately." (Doc. 35 ¶9) Although the SAC does not specifically describe that response, the police report states that Mrs. Ivchenko "began to scream" and tried to approach the front door where her husband was despite Officer Treglown asking her multiple times to not approach the door. (Ex. 1 at 7). She was also "yelling aggressively, swinging her arms, and pointing." (Ex. 1 at 4). The SAC alleges that Officer Treglown then pushed her a second time. (Doc. 35 ¶9)

---

[2] The propriety of considering the Police Report at the motion to dismiss stage is discussed in section II.A.2. below.
[3] Despite the SAC's assertion that "Defendant Officers then instructed Mr. Ivchenko to leave his home," the location of the police call was Mrs. Ivchenko's home. Mr. Ivchenko resided at a different address. (Ex. 1 at 1)

3

3.      *Officer Treglown Arrests Mrs. Ivchenko with Assist from Officer Ryan.*

Mrs. Ivchenko "became even more agitated and berated Officer Treglown." (Doc. 35 ¶10) Mrs. Ivchenko assaulted Officer Treglown by "knowingly touch[ing him] in the chest area with the intent to provoke him." (Ex. 2 at 1) Officer Treglown arrested her, grabbing her right arm in making the arrest. (Doc. 35 ¶10) Officer Ryan grabbed her left arm to assist in the arrest. (Doc. 35 ¶10)

The SAC claims that "the Defendant officers led Mrs. Ivchenko out of her home" without specifying which officer, but the Police Report clarifies that Officer Treglown walked Mrs. Ivchenko out of the apartment and placed her in the back of the squad car. (Doc. 35 ¶11, Ex. 1 at 4) Mrs. Ivchenko was not wearing shoes at the time. (Doc. 35 ¶11) Mrs. Ivchenko was walked out to the car sometime after the police encounter began at 6:14 p.m. (Ex. 1 at 1) Sunset was at 7:04 p.m. and the high temperature in Scottsdale that day reached 88 degrees. (Ex. 4)

B.      **Legal Proceedings Follow the Police Encounter.**

Because of this incident, Mrs. Ivchenko was charged with 1) aggravated assault on an officer with no injury 2) assault on Mr. Ivchenko, and 3) disorderly conduct. (Ex. 1 at 1) Officer Treglown, as the arresting officer, completed the police report, with Officer Dearing writing a supplemental narrative. (Ex. 1 *gen'ly*) In the report, Officer Treglown describes Mrs. Ivchenko's assault on him. (Ex. 1 at 4). Officer Dearing's supplement states: "from where I was standing I could not view any altercation between Renee [Ivchenko] and Officer Treglown as I was also paying attention to the front door and Renee at once." (Ex. 1 at 7). Officer Ryan did not complete a narrative summary.

Mrs. Ivchenko voluntarily entered a Felony Diversion Program, which she successfully completed, resulting in the dismissal of all charges. (Ex. 2 *gen'ly*) Because there was no trial, none of the officers testified against her. As part of the program, Mrs. Ivchenko acknowledged that she was guilty of assaulting Officer Treglown and that she touched him intentionally with an intent to provoke him. (Ex. 2 at 1) Despite this, the SAC claims in four separate places that Officer Treglown lied when claiming that she assaulted him. (*See* Doc. 35 ¶¶10, 11, 20, 21) The

4

SAC also claims without further detail that Officer Dearing and Officer Ryan "agreed with Defendant Treglown's lie," (SAC ¶11) despite the fact that neither testified against Mrs. Ivchenko, Officer Ryan did not write a report, and Officer Dearing said he could not see.

### C. General Allegations As to City Claim and Damages.

The SAC does not allege that Mrs. Ivchenko suffered any pain or physical injury as a result of the two alleged "pushes," having each arm grabbed during her arrest, or in walking barefoot to the squad car. Mrs. Ivchenko describes her damages as follows: "As a direct and proximate result of Defendants' unlawful conduct, Plaintiff suffered emotional injuries, and other damages and losses as described herein." (Doc. 35 ¶24)[4]

The SAC alleges only general allegations against the City of Scottsdale regarding training, alleging that the City inadequately trained officers in "affording citizens with disabilities their rights and effectuating proper arrests" and that the City "has a wide policy of failing to train its officers in these areas, including a failure to train the named officer Defendants." (Doc. 35 ¶6) The SAC further alleges that the City "failed to properly train their police officers for peaceful encounters with disabled persons, and such failure resulted in discrimination against Plaintiff' and "failed to properly train its police officers to recognize symptoms of disabilities, and failed to modify its police policies, practices, and procedures to prevent discriminatory treatment of the disabled." (Doc. 35 ¶30) The SAC makes no allegations critical of the City or its officers arising out of any other police interactions with the public than the one giving rise to the lawsuit, including Mrs. Ivchenko's four other police interactions in the ten months before this incident. (Doc. 35. ¶7).

### D. Procedural Background of SAC.

This case was originally filed on December 16, 2019. (Doc. 1). On May 28, 2020, counsel first began the first of many discussions regarding the deficiencies in the claims, and Defendants provided a complete MIDP disclosure to Plaintiff, including all camera footage of

---

[4] Plaintiff's MIDP Disclosures clarify that "Plaintiff seeks damages for emotional distress and mental suffering," but make no reference to any physical injury. (Doc. 27-1 at 5)

5

the encounter. (*See* Notice of Conferral, Doc. 25, Doc. 27 at 6) The parties first agreed to amend the pleadings by July 2, 2020 (Doc. 27 at 6), but Case Management Order set July 27, 2020 as the deadline (Doc. 32 at 1). Plaintiff filed the SAC on July 27, 2020 (Doc. 35), and Defendants conferred again with Plaintiff's counsel prior to filing the instant motion. (Notice of Conferral)

Should the Court determine that dismissal is warranted, Defendants respectfully request that the Court consider denying further leave to amend absent a showing of good cause to modify the scheduling order. *See Johnson v. Mammoth Recreations Inc.*, 975 F.2d 604 (9th Cir. 1992) (Civil Procedure Rule 15(a)'s liberal amendment policy does not overrule Rule 16(b)'s good cause requirement to amend scheduling order).

### III.  LEGAL ARGUMENT

#### A.  Legal Standards for Dismissal Under Rule 12(b)(6).

##### 1.  *Minimum Pleading Standards for Legally Cognizable Claims.*

To survive a motion to dismiss for failure to state a claim, a complaint must include a "short and plain statement of the claim showing that the pleader is entitled to relief." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); Fed. R. of Civ. P. 8(a)(2); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 696 (2009) (complaint must contain "enough facts to state a claim to relief that is plausible on its face."). This requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Instead, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012) (quoting *Iqbal*, 556 U.S. at 678).

When evaluating a motion to dismiss, a court accepts all factual allegations as true, draws all reasonable inferences therefrom, but need not accept legal conclusions. *See Twombly*, 550 U.S. at 555; *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1296–97 (9th Cir. 1998). It is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th

Cir. 2001). "Vague and conclusory allegations of official participation in civil rights violations are not sufficient to withstand a motion to dismiss." *Ivey v. Board of Regents*, 673 F.2d 266, 268 (9th Cir.1982). The Court also may dismiss due to "a lack of a cognizable legal theory." *Mollett v. Netflix, Inc.*, 795 F.3d 1062, 1065 (9th Cir. 2015) (citation omitted).

2. *Authorization for Limited Judicial Notice For Rule 12(b)(6) Motion.*

In evaluating a motion to dismiss, the Court need not "accept as true allegations that contradict matters properly subject to judicial notice or by exhibit." *Sprewell*, 266 F.3d at 988. The Court may take judicial notice of matters of public record without converting a motion to dismiss into one for summary judgment. *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001) (overruled on other grounds by *Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119, 1125-26 (9th Cir. 2002), which itself was abrogated on other grounds by *Twombly*, 550 U.S. 544.). Documents may be considered if a plaintiff's complaint necessarily relies on them. *Lee*, 250 F.3d at 690 (citation omitted). The Court may also take judicial notice of "matters of public record" under Rule 201 of the Rules of Evidence. *Id.*

Defendants respectfully request that the Court take judicial notice of the following documents: the police report of the incident (Ex. 1), county court records in Mrs. Ivchenko's criminal case (Ex. 2), and temperature and sunset data (Ex. 3). The police report is integral to the SAC for the purpose of determining which officers participated in the preparation of the report, which is relevant to Mrs. Ivchenko's claim that officers lied about her and not offered for any hearsay contained therein. Although there are discrepancies between the police report and the SAC's factual claims, they are not material issues that must be resolved in order to grant the instant motion. The county records, which include Mrs. Ivchenko's assault confession, are part of the official record of the Maricopa County Superior Court and as such can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned. *See* Rule 201(b)(2), Fed. R. Evid. The daily high temperature and time of sunset are generally known within the trial court's territorial jurisdiction. *See* Rule 201(b)(1), Fed. R. Evid.

B.     **Incurable Pleading Deficiencies Defeat Nearly Every Claim in the SAC.**

   1.     *Unlawful Arrest: All Defendants*

The SAC alleges unlawful arrest against the officer defendants, but the claim must be dismissed because the officers had probable cause. Unlawful arrest claims arise out of the Fourth Amendment via 42 U.S.C. § 1983. *Dubner v. City and Cnty. of San Francisco*, 266 F.3d 959, 968 (9th Cir. 2001). To prevail on a § 1983 false arrest claim, a plaintiff must demonstrate that there was no probable cause to arrest. *Hart v. Parks*, 450 F.3d 1059, 1069 (9th Cir. 2006) (citation omitted). "If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender." *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001).

The SAC alleges a claim of unlawful arrest based on a lack of probable cause (Doc. 35 ¶17), but the SAC itself demonstrates substantial probable cause for the officers to arrest Mrs. Ivchenko. First, the SAC admits that Mrs. Ivchenko's 911 call was false. (Doc. 35 ¶¶7-8) A "false, fraudulent or unfounded report or statement" to 911 is a Class 1 misdemeanor. *See* Ariz. Rev. Stat. § 13-2907.01. "[A] plaintiff can . . . plead himself out of a claim by including unnecessary details contrary to his claims," and courts are not required to accept conclusory allegations which are contradicted by documents referred to in the complaint. *Sprewell*, 266 F.3d at 988-89 (citations omitted).

Second, Mrs. Ivchenko has admitted to the crime of assaulting Officer Treglown, which is a Class 2 felony. (Ex. 2 at 1) *See* Ariz. Rev. Stat. § 13-204 (Aggravated Assault). Although the SAC denies the assault, for purposes of ruling on a motion to dismiss, the Court does not have to "accept as true allegations that contradict matters properly subject to judicial notice or by exhibit." *See Sprewell*, 266 F.3d at 988. The fact that the charges were dismissed after completion of the Felony Diversion Program does not obviate probable cause as established by Mrs. Ivchenko's confession. *See Freeman v. City of Santa Ana*, 68 F.3d 1180, 1189 (9th Cir. 1995) (dismissal of charges does not negate probable cause).

2.     *Excessive Force: Officer Ryan and Officer Dearing*

Plaintiff asserts claims of excessive force against each officer defendant. The claims against Officers Ryan and Dearing should be dismissed for failure to state a claim without reference to qualified immunity because the SAC does not allege any force used against them that could give rise to any Fourth Amendment violation. When evaluating a Fourth Amendment excessive force claim, the Ninth Circuit requires analysis of the gravity of the force, severity of the crime, risk to others, and any attempts by the suspect to resist. *See Miller v. Clark Cnty.*, 340 F.3d 959, 964 (9th Cir. 2003) (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)). Police officers "are not required to use the least intrusive degree of force possible." *Gregory v. Cnty. of Maui*, 523 F.3d 1103, 1107 (9th Cir. 2008) (internal quotation omitted). For a complaint to state a claim, however, some amount of force must be ***alleged***.

The only force alleged in the entirety of the complaint is 1) two "pushes" by Officer Treglown prior to the arrest, 2) the arrest itself, in which Officer Treglown grabbed one arm and Officer Ryan grabbed the other, and 3) being walked to the car without shoes at sunset on a cool day (which is attributed to "Defendants" but which the police report makes clear was Officer Treglown as the arresting officer). (Doc. 35 ¶¶9-11) The SAC alleges no physical injury, just "emotional distress and damages." (Doc. 35 ¶24) The SAC alleges no force used by Officer Dearing.

The only force alleged as to Officer Ryan is that he grabbed Mrs. Ivchenko's right arm to assist Officer Treglown in the arrest. This is not excessive force as a matter of law; using reasonable physical coercion to effect an arrest is not excessive. *See Graham*, 490 U.S. at 396 ("[T]he right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it"); *see also Rodriguez v. Farrell*, 280 F.3d 1341, 1351 (11th Cir. 2002) (recognizing that "the typical arrest involves some force and injury"), *Bodney v. Pima Cnty. Sheriff's Dep't*, No. CV 06-0015-TUC-CKJ, 2009 WL 2513786, at *7 (D. Ariz. Aug. 7, 2009) (dismissing claim against arresting officer who held

suspect's arm while suspect was tased by another officer because "the force applied by [officer holding the suspect] was *de minimis*").

To the extent that the excessive force claim against Officer Treglown is premised on his grabbing Plaintiff's left arm during the arrest itself, this amount of force incident to arrest cannot give rise to any claim for excessive force as a matter of law under the above standards. The only excessive force claim that the SAC effectively pleads is Officer Treglown's two pushes and his walking Plaintiff to the car barefoot.  This part of the claim will be discussed in the qualified immunity section III.B. below.

### 3. *Failure to Intervene: All Defendants*

Plaintiff asserts a claim of failure to intervene to stop the arrest, which fails because the claim alleges insufficient facts and the arrest itself was lawful. Plaintiff claims "Defendants Ryan and Dearing, knowing no assault had occurred, had a duty to intervene when Defendant Treglown violated Plaintiff's constitutional rights, failed to intervene and assisted Defendant Treglown in arresting Plaintiff." (Doc. 35 ¶20) This claim appears to arise out of the allegedly unlawful arrest claim, which fails for reasons discussed above. Additionally, to maintain a claim for failure to intercede in a constitutional rights violation, a complaint must plead specific facts regarding each other officer's opportunity to intercede to stop the force. *See Cunningham v. Gates*, 229 F.3d 1271, 1289 (9th Cir. 2000). The vague and conclusory allegation of the SAC as to the supposed failure to intervene wholly fails to meet even the permissive pleading standards of *Twombly*. 550 U.S. at 555 ("formulaic recitation of the elements . . . will not do"), *see also Bruns*, 122 F.3d 1257 ("Vague and conclusory allegations of official participation in civil rights violations are not sufficient.") The SAC and police report demonstrate that officers were not able to see Officer Treglown allegedly push Mrs. Ivchenko, as they were keeping the spouses apart. The SAC fails to articulate any claims against either officer that could give rise to an obligation to intervene or opportunity to do so.

4. *Privacy: All Defendants*

The SAC's privacy claim should be dismissed for failure to state a claim because the claim is insufficiently pled and because the SAC demonstrates that the officers had the legal right to be present in Mrs. Ivchenko's home.  The SAC claims that Mrs. Ivchenko "had a right to be secure in her home without unreasonable interference with prviacy within her home by the Defendant police officers." (Doc. 35 ¶14) The SAC demonstrates that as a legal matter, the officers had a right to be in the home to investigate the report of a crime and to ensure the safety of the fighting spouses—one intoxicated—from themselves and each other as part of their community caretaking function. As a practical matter, the SAC notes that the officers were there because Mrs. Ivchenko invited them.

Police officers are not only permitted, but expected, to exercise what the Supreme Court has termed "community caretaking functions, totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute." *Cady v. Dombrowski*, 413 U.S. 433, 441 (1973). In the course of exercising this function, an officer may have occasion to seize a person, as the Supreme Court has defined the term for Fourth Amendment purposes, in order to ensure the safety of the public or the individual, regardless of any suspected criminal activity. *United States v. King*, 990 F.2d 1552, 1560 (10th Cir. 1993), *see also Martin v. City of Oceanside*, 360 F.3d 1078, 1082 (9th Cir. 2004) (articulating three-part test for "emergency aid" exception).

After receiving the 911 call, officers had grounds to believe there was a need for their assistance to protect someone at Mrs. Ivchenko's home from danger. Under the undisputed facts in the SAC, Officers were confronted with an extremely upset and intoxicated woman who had told them she was being abused by Mr. Ivchenko. Keeping fighting spouses apart during questioning protected Mr. and Mrs. Ivchenko and the officers from facing any escalation of violence with potential suspects who were out of control. This is squarely within the officers' community caretaking function and cannot give rise to any Fourth Amendment claim as a matter of law.

### 5. *Due Process: All Defendants*

The SAC makes reference to due process but fails to articulate any law or fact that would state an actual claim. The SAC's sole reference to due process states: "Plaintiff also had a clear constitutional right under the Fourteenth Amendment to be free from unlawful arrest and the use of excessive force and be afforded due process." (Doc. 35 ¶15) If "due process" in the SAC intends to apply to the officers pre-arrest deprivations of liberty, that is a Fourth Amendment claim, not Fourteenth Amendment due process. *See Albright v. Oliver*, 510 U.S. 266, 271-272 (1994); *see also Galbraith*, 307 F.3d at 1127, *and Armendariz v. Penman*, 75 F.3d 1311, 1318–19 (9th Cir. 1996) (both holding that Fourth Amendment, not Fourteenth, is correct source of pre-detention rights). To the extent that the due process claim is meant to encompass any post-detention process, it would fail. The SAC alleges that Officer Treglown lied about her assault on him, but Mrs. Ivchenko admitted it. The SAC alleges that Officer Ryan and Officer Dearing "complicatedly agreed with Defendant Treglown's lie" (Doc. 35 ¶11), but it does not attach that conduct to any process—the police report contains no statements from Officers Ryan or Dearing regarding the assault, and no officer testified against her due to her enrollment in the Felony Diversion Program. This incident provides no basis for any due process claim.

### 6. *Conspiracy: All Defendants*

Plaintiff asserts a conspiracy claim against all Defendants that is entirely conclusory and therefore fails to state a claim. The SAC assert that "Defendant police officers engaged in a conspiracy to deprive Plaintiff of her constitutional rights by manipulating Plaintiff's disability so that they could affect [sic] an arrest, positioned themselves so that their body cameras would likely not record any incident with Plaintiff, and filing a false and misleading police report alleging a felony assault against Plaintiff." (Doc. 35 ¶21) The factual portion of the SAC, however, does not give any indication of which officers conspired or agreed, what actions each specifically may have taken to "manipulate" Plaintiff, or how or in what way they contributed to filing a false police report. Notably, the only allegation of falsity in the report is the assault on Officer Treglown that Mrs. Ivchenko admitted.

"A mere allegation of conspiracy without factual specificity is insufficient." *See Karim-Panahi v. Los Angeles Police Dep't.*, 839 F.2d 621, 626 (9th Cir. 1988) (analyzing conspiracy claim under 42 U.S.C. § 1985). "[B]are allegations and rank conjecture are insufficient to support a claim under § 1985 for a civil conspiracy." *Assali v. City of Simi Valley*, No. CV 13-09201-R(VBK), 2014 WL 3818062, at *9 (C.D.Cal. 2014) (internal quotation omitted). Pleading a conspiracy requires more than simply notice, it requires "enough factual matter (taken as true) to suggest that an agreement was made." *Twombly*, 550 U.S. at 556. The well-pled facts must show an agreement or "meeting of the minds." *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158 (1970). As the SAC does neither, the conspiracy claim should be dismissed.

    7. <u>*Punitive Damages: Claim Should Be Dismissed*</u>

The SAC's complaint for punitive damages should be dismissed for failure to state a claim because, as a matter of law, the conduct complained of in the SAC could never give rise to a punitive damages claim. Punitive damages are only available against individual officer defendants, and only when there is a reckless or callous disregard for a plaintiff's rights. *Smith v. Wade*, 461 U.S. 30, 51 (1983). In the present case, one officer effectuated a lawful arrest and all force was *de minimis.* To the extent that any part of the SAC survives this motion, the punitive damages claim should be dismissed.

    8. <u>*Disability Discrimination: All Defendants*</u>

The SAC alleges a claim for disability discrimination under the ADA/RA that relies on a legally defective premise and therefore fails to state a claim. *See Vos v. City of Newport Beach*, 892 F.3d 1024, 1036–37 (9th Cir. 2018) (ADA and RA are analyzed together because they provide "identical 'remedies, procedures and rights.'"). The SAC claims that the officers "could have made the reasonable accommodations of permitting Plaintiff to stay in her home with her husband after she made a baseless 911 call and/or invoking an involuntary commitment as requested by her husband." (Doc. 35 ¶27) Because Plaintiff had committed a crime, however, the officers were allowed to arrest her—"reasonable accommodation" does not prohibit an officer from arresting a disabled person who assaults him.

13

Disability discrimination claims occur where 1) someone is wrongfully arrested because officers "misperceive" the expression of disability as a crime or 2) where officers fail to accommodate a disability "in the course of investigation or arrest, causing the person to suffer greater injury or indignity in that process than other arrestees." *Sheehan v. City & Cnty. of San Francisco*, 743 F.3d 1211, 1232 (9th Cir. 2014), *rev'd in part on other grounds, City & Cnty. of San Francisco v. Sheehan*, 135 S. Ct. 1765 (2015). No officer misperceived Mrs. Ivchenko's disability as a crime. While intoxication no doubt contributed to Mrs. Ivchenko's commission of the crimes, the officers *accurately* perceived the assaults on Mr. Ivchenko and Officer Treglown as crimes. No officer failed to provide reasonable accommodations to arresting Mrs. Ivchenko, as both the SAC's proffered accommodations involve ***not*** arresting her. "Knowledge of a person's disability simply cannot foreclose officers from protecting themselves, the disabled person, and the general public when faced with threatening conduct by the disabled individual." *Bates ex rel. Johns v. Chesterfield Cty., Va.*, 216 F.3d 367, 372 (4th Cir. 2000).

A plaintiff bears the initial burden of alleging that a reasonable accommodation exists. *Id.* at 1233 (additionally noting that fact-specific reasonableness analysis need not be reached until plaintiff meets initial burden to state a claim). Reasonable accommodation need only be made where such accommodation would not "fundamentally alter[] the nature of the program or activity." *A.G. v. Paradise Valley Unified Sch. Dist. No. 69*, 815 F.3d 1195, 1206 (9th Cir. 2016) (*citing* 1 Americans with Disabilities: Practice and Compliance Manual § 1:247 (2015); *Wong v. Regents of the Univ. of Cal.*, 192 F.3d 807, 816 (9th Cir.1999)). *Id.* While state law does provide officers with the discretionary power to detain people who for remand to an "approved alcoholism reception center" for their protection, doing so is fundamentally different from an arrest, which involves taking someone to jail for a penological purpose. *See* Ariz. Rev. Stat. § 36-2026. Although Mr. Ivchenko made the request to officers on scene, there are good policy reasons not to commit someone to a hospital facility on the say-so of a husband who is an alleged victim and alleged perpetrator of recent abuse.

Additionally, the discrimination claim fails to meet the requirement of but-for cause. Disability discrimination claims under the ADA/RA only lie where the individual's claimed injury would not have occurred but-for the fact of her disability such that a non-disabled person would have suffered no injury for the same conduct. *See Wisconsin Cmty. Servs., Inc. v. City of Milwaukee*, 465 F.3d 737, 754 (7th Cir. 2006). In this case, it matters not that Mrs. Ivchenko was an alcoholic. She was arrested because she assaulted two people, one of them an officer, just as anyone else would have been. The ADA/RA claim should be dismissed.

9. *Failure to Train: All Defendants*

The SAC's allegations against the City for its "policy" of failure to train is conclusory and fails to meet minimal pleading standards. The SAC describes the facts giving rise to the failure to train claim as follows:

- **Upon information and belief** . . . [t]he Defendant Officers were inadequately trained in affording citizens with disabilities their rights and effectuating proper arrests" and that the city "has a wide [sic] policy of failing to train its officers in these areas, including a failure to train the named officer Defendants. (Doc. 35 ¶6) (emphasis added)

And describes the claim as follows in its entirety:

- Defendant City of Scottsdale failed to properly train their police officers for peaceful encounters with disabled persons, and such failure resulted in discrimination against Plaintiff. Defendant City of Scottsdale failed to properly train its police officers to recognize symptoms of disabilities, and failed to modify its police policies, practices, and procedures to prevent discriminatory treatment of the disabled." (Doc. 35 ¶30)

- The City of Scottdale is a public entity charged with the responsibly under Title II of the Americans with Disabilities Act and the Rehabilitation Act to comply with public anti-discrimination laws, and to properly train the Defendant police officers to reasonably accommodate the Plaintiff's disability." (Doc. 35 ¶31)

Plaintiff fails to allege facts sufficient to support a constitutional claim against the Defendant City. *See Monell v. Dept. of Soc. Serv. of N.Y.*, 436 U.S. 658 (1978). A municipality may not be sued solely because an injury was inflicted by one of its employees or agents as there is no vicarious liability under Section 1983. *Monell*, 436 U.S. at 691, 694; *see also Sadoski v. Mosley*, 435 F.3d 1076, 1080 (9th Cir. 2006) (affirming 12(b)(6) dismissal of a municipality).

To state a constitutional claim against a municipality, a plaintiff must allege facts to establish that his constitutional rights were violated pursuant to a policy, practice, or custom of

the municipality. *Cortez v. Cnty. of Los Angeles*, 294 F.3d 1186, 1188 (9th Cir. 2001) (citing *Monell*, 436 U.S. at 690-91). One way to plead a *Monell* claim is to allege "a deliberate choice by a policy-making official," but the SAC does not do that. *See Oviatt v. Pearce*, 954 F.2d 1470, 1477–78 (9th Cir. 1992). A plaintiff "cannot prove the existence of a municipal policy or custom based solely on the occurrence of a single incident or unconstitutional action by a non-policymaking employee." *Davis v. City of Ellensburg*, 869 F.2d 1230, 1233 (9th Cir. 1989); *see also Hunter v. Cty. of Sacramento*, 652 F.3d 1225, 1233 (9th Cir. 2011) ("Liability for improper custom may not be predicated on isolated or sporadic incidents.").

The SAC only alleges a single negative experience with the Scottsdale police, whether by Mrs. Ivchenko or any other member of the public. In fact, the SAC draws a comparison to Mrs. Ivchenko's four previous recent encounters with the police, which it does not criticize. (Doc. 35 ¶7). The conclusory allegations merely parrot the proof standard. The Court is not required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences. As the SAC fails to state any viable claims against the City directly, the "failure to train" claim should be dismissed.

    **C.**    **Qualified Immunity Bars All Excessive Force Claims.[5]**

The excessive force claims in the SAC implicate no existing precedent that places the statutory or constitutional questions beyond debate, and this pure question of law may be properly resolved at the motion to dismiss stage. Claims may be dismissed on the basis of qualified immunity if they fail to allege a violation of a clearly established statutory or constitutional right of which a reasonable person would have been known. *Starr v. Baca*, 652 F.3d 1202, 1215–16 (9th Cir. 2011) (citation omitted); *see also Pearson v. Callahan*, 555 U.S. 223, 237 (2009) (qualified immunity is immunity from suit, not just liability). For a complaint to survive a motion to dismiss, it must include factual allegations that "plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the

---

[5] All officer defendants assert that qualified immunity applies to bar all of the claims against them and reserve the right to move for summary judgment on this basis should the case proceed.

expense of discovery and continued litigation." *Starr*, 632 F.3d at 1215–16. While the Ninth Circuit "does not . . . require plaintiffs to anticipate or plead around qualified immunity defenses in their complaints," dismissal before discovery is appropriate in "limited circumstances." *Chavez v. Robinson*, 817 F.3d 1162, 1169 (9th Cir. 2016) (*as amended on reh'g* (Apr. 15, 2016) (internal quotations omitted) (reviewing pre-service dismissal of *pro per* complaint).

To overcome an officer's assertion of qualified immunity, a plaintiff must show that 1) the official's actions violated a constitutional right and 2) the right was "clearly established." *Nelson v. City of Davis*, 685 F.3d 867, 875 (9th Cir. 2012) (*citing Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "Whether a constitutional right was violated is question of fact." *Keates v. Koile*, 883 F.3d 1228, 1234–35 (9th Cir. 2018), *citing Tortu v. Las Vegas Metro. Police Dep't*, 556 F.3d 1075, 1085 (9th Cir. 2009). "The clearly established inquiry, on the other hand, is a question of law that only a judge can decide." *Id.*, *citing Morales v. Fry*, 873 F.3d 817, 821 (9th Cir. 2017). At the complaint stage, the Court "does not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Keates*, 883 F.3d at 1239, *citing Al–Kidd*, 563 U.S. at 741.

The SAC arguably pleads the elements of an excessive force claim against Officer Treglown, insofar as it alleges that Officer Treglown pushed Mrs. Ivchenko two times and walked her barefoot to the car, and the SAC at its most generous reading alleges that this force was greater than necessary to effect an arrest. (As discussed in III.B.2 above, Officer Treglown's grabbing of Mrs. Ivchenko's arm during the arrest itself is *de minimis* force incident to an arrest and not actionable.)

In preparation for this motion to dismiss, an exhaustive search was undertaken to determine whether there was any legal authority for the proposition that a non-injurious pushing of a suspect or walking an arrestee to a car without shoes could rise to the level of a constitutional injury. In fact, the cases hold that "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers," is a Fourth Amendment violation. *Graham v. Connor*, 490 U.S. 386, 396 (1989), *citing Johnson v. Glick*, 481 F.2d, at 1033. In an

Eighth Amendment use of force analysis, the Supreme Court found that "an inmate who complains of a push or shove that causes no discernible injury almost certainly fails to state a valid excessive force claim." *Wilkins v. Gaddy*, 559 U.S. 34, 38, 130 S. Ct. 1175, 1178, 175 L. Ed. 2d 995 (2010) (internal quotation and citations omitted).

In the unpublished case of *Padilla v. City of San Diego California*, the Ninth Circuit analyzed the question of an officer who leaned his body onto a suspect for less than fifteen seconds and yelled in his ear. 258 F. App'x 964, 965 (9th Cir. 2007). The district court had found that "that any force, no matter how minor . . . was excessive because it was no longer necessary for accomplishing [any] legitimate purpose." *Id.* The Court of Appeals disagreed, citing *Graham*'s comment that not every push or shove, ***even if unnecessary***, would rise to the level of a constitutional violation. *Id.*

Any excessive force claim against any officer defendant is barred as a matter of law by qualified immunity because there are no cases in which the quantum of force similar to that described in the SAC has been clearly established as an excessive use of force.

## V.   CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court dismiss the SAC without leave to amend.

DATED this 11th day of August, 2020.

                        **SCOTTSDALE CITY ATTORNEY'S OFFICE**

                        */s/ Diana Day*
                        Diana Day, Assistant City Attorney
                        3939 North Drinkwater Boulevard
                        Scottsdale, Arizona 85251
                        Attorneys for City of Scottsdale, Officer Treglown, Detective Ryan, and Officer Dearing

# CERTIFICATE OF SERVICE

I hereby certify that on this 11th day of August, 2020, I electronically transmitted the attached document to the Clerk's office using the CM/ECF System for filing and electronic service to:

Elizabeth D. Tate
ELIZABETH D. TATE ATTORNEY AT LAW
2953 N. 48th Street
Phoenix, AZ 85016
attorneyelizabethtate@yahoo.com
Attorneys for Plaintiff

/s/ Diana Day
An Employee of the Scottsdale City Attorney's Office