**SCOTTSDALE CITY ATTORNEY'S OFFICE**
Diana Day (SBN: 023174)
3939 North Drinkwater Boulevard
Scottsdale, Arizona  85251
(480) 312-2405 (T)
legal@scottsdaleaz.gov

Attorneys for Defendants City of Scottsdale,
Officer Treglown, Detective Ryan, and Officer Dearing

# IN THE UNITED STATES DISTRICT COURT FOR THE

# DISTRICT OF ARIZONA

| | |
|---|---|
| Renee Ivchenko, a married individual, | Case No. 2:19-cv-05834-ROS-DMF |
| Plaintiff, | |
| vs. | **CITY DEFENDANTS' REPLY IN SUPPORT OF MOTION (DOC. 36) TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT (DOC. 35)** |
| City of Scottsdale, a municipal corporation; Officer Brandon Treglown, in his individual capacity, Officer Sean Charles Ryan, in his individual capacity, Officer Thomas Michael Dearing, in his individual capacity, Maricopa County, a governmental entity, Sheriff Paul Penzone, in his official and individual capacities, | |
| Defendants. | |

Defendants Treglown, Ryan, Dearing, and City of Scottsdale, through undersigned counsel, hereby submit this Reply in Support of their Motion to Dismiss (Doc. 36).  Plaintiff's Response to the motion (Doc. 37) admits key facts supporting dismissal and sets forth no law that would allow the Second Amended Complaint's ("SAC") claims to survive.  Defendants therefore respectfully request that the Court dismiss the SAC for failure to state a claim.

## I. The Response's Concessions Are Dispositive.

The Response fails to address two important arguments, and its silence may be deemed an admission on these points. *See, e.g.*, *Hein v. City of Chandler*, No. CV-15-01162-PHX-DJH, 2016 WL 11530432, at *5 (D. Ariz. Sept. 16, 2016) ("Given Plaintiff's silence, presumably he is abandoning his *Monell* claim."). These concessions justify granting the Motion to Dismiss in its entirety.

The first concession is that Mrs. Ivchenko committed a crime prior to her arrest. The Response explicitly acknowledges Defendants' argument that "Mrs. Ivchenko pled herself out of court because the SAC alleges that Mrs. Ivchenko made [a] baseless police report that is a misdemeanor." (Doc. 37 at 12) *See also* Ariz. Rev. Stat. § 13-2907.01. The Response does not deny the misdemeanor, nor does it address the argument that the arrest is lawful because there was probable cause to arrest for that misdemeanor. For Fourth Amendment purposes, an officer may lawfully arrest a suspect for "even a very minor criminal offense." *See Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001) (No liability under 42 U.S.C. § 1983 for arresting motorist for failing to wear seatbelt). Rather than dispute probable cause on the misdemeanor, the Response instead argues that there was an additional warrant requirement based on the location of the arrest. This is incorrect for reasons discussed in section II below. In the meantime, the SAC's admission of Mrs. Ivchenko's criminal conduct establishes probable cause for her arrest.

The second concession is that there was no excessive force used against Mrs. Ivchenko. Throughout the Response, Plaintiff mentions "force" (or "use of force" or "excessive force") only one time, and that reference is only a summary of Defendants' arguments. (Doc. 37 at 9 ("Defendants argue that Mrs. Ivchenko's unlawful arrest, excessive force for Defendants Ryan and Dearing…")) In the argument sections that follow, the Response fails to address any issues pertaining to force by any of the officers, including the grabbing, pushing, or shoeless walk to the car. The Response does not claim that the force would violate any constitutional limits. Nor does it cite any case law clearly establishing any constitutional rights to be free of the amount of

force used in this case.  Plaintiff's silence on the excessive force issue may be deemed an admission and compel dismissal.

The concessions regarding misdemeanor probable cause and amounts of force require dismissal of these two claims as to every Officer Defendant.  Further, there can be no liability for any contingent claims based on unlawful arrest or excessive force, including conspiracy, failure to intervene, *Monell* claims against the City, RA/ADA disability discrimination claims, and punitive damages.  (*See gen'ly* Doc. 36 at 10, 12-15)

**II.     Plaintiff's Motion to Strike Should Be Denied.**

Defendants respectfully request that the Court deny the request to strike portions of the motion to dismiss, the police report, and Mrs. Ivchenko's acknowledgement of her felony assault on Officer Treglown.  The request to strike is improper, as LRCiv 7.2(m) authorizes striking material under particular rules of civil procedure that do not apply here or "on the ground that [the material to be stricken] is prohibited (or not authorized) by a statute, rule, or court order."  The Response does not claim that the exhibits or arguments are prohibited or unauthorized by statute, rule, or order.

Instead, the Response argues that the exhibits should not be considered because they are "extraneous" to a motion to dismiss.  Even if the Court were to accept that the material is extraneous, the well-established remedy would be to consider extraneous material and convert the motion into a Rule 56 motion, not strike the exhibits from the record.  *See* Fed. R. Civ. P. 12(b), *United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003) (explaining conversion process).  Moreover, as discussed in section III below, the Court may properly take judicial notice of the attachments, which are expressly incorporated into the SAC, to resolve the pending motion under Rule 12(b)(6) alone.

Plaintiff further argues that Mrs. Ivchenko's acknowledgement of guilt should be stricken because in it, she acknowledges that she is waiving her right to remain silent as a criminal defendant.  The consent does not, however, require that it may **only** be used against her in her criminal proceeding:

> As part of my consent to participate in the Felony Pretrial Intervention Program, I acknowledge that I am guilty of the offenses charged in the complaint. I acknowledge that this admission and the statements in this document may be used against me if I fail to successfully complete the program and my case proceeds to trial. I understand that I have the right to remain silent and I make the following statements voluntarily after consultation with my attorney.

(Excerpts from Doc. 36-1 at 13)  Acknowledging one consequence does not insulate Mrs. Ivchenko from any of the other consequences of her decision to confess.  The fact remains that Mrs. Ivchenko has admitted as a matter of public record both her assault and her guilt.  Her decision to sue her victim does not obligate the defendant officer or the Court to ignore her confession.

**III.    The SAC Explicitly Incorporates the Police Report and Court Records.**

Documents referenced in a complaint are considered part of the complaint for purposes of a motion to dismiss, even where the plaintiff fails to attach the document to the complaint and the defendant introduces it with the dismissal motion.  *Branch v. Tunnell*, 14 F.3d 449, 453–54 (9th Cir. 1994), *overruled on other grounds by Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002).  Considering such documents does not require conversion of a motion to dismiss into a motion for summary judgment.

The SAC explicitly incorporates the police report and court records attached as exhibits to the motion.  For example:

> Defendant police officers engaged in a conspiracy to deprive Plaintiff of her constitutional rights by . . . filing a false and misleading **police report** alleging a felony assault against Plaintiff.

(Doc. 35 ¶21)  The SAC also refers to the court documents, as it specifically references the "prosecution motion" dismissing the charges based on her successful completion of the Felony Pretrial Intervention Program.  (Doc. 35 ¶11)  Mrs. Ivchenko's consent to that program, which is

4

part of that same public record from the county, may be fairly considered as part of the documents incorporated into the SAC.

It should be noted that incorporated documents referred to in complaints may be referred to "if [their] authenticity is not questioned." *Branch*, 14 F.3d at 453-54. With respect to the police report, the Response states "[i]t is also lacking in foundation and authentication." The Response stops short of claiming that the exhibit is not an authentic copy of the official police report. This absence is notable, because Mrs. Ivchenko has been provided copies of the police report previously, including with Defendants' MIDP disclosure on May 28, 2020. Undersigned counsel avers that Exhibit 1, Doc. 36-1 pages 3-11, is a true and accurate copy of the Scottsdale Police Incident/Investigation Report for Case No. 18-08959, less redactions required by the federal rules. Plaintiff has never previously raised any question regarding the authenticity of the police report, and it does not appear from the text of the Response that she is making any affirmative allegation that the police report is inauthentic now.

**IV.    Dismissal Does Not Require Resolution of Any Fact Dispute.**

In moving to dismiss, Defendants do not ask the Court to resolve any factual disputes, nor to review any evidence beyond that which is incorporated into the complaint or is subject to judicial notice. The documents incorporated into a complaint may be relied upon as part of a Rule 12(b) motion, even—in limited circumstances—when those exhibits contradict factual allegations in the complaint itself. Moreover, the Court has sufficient grounds to grant the motion to dismiss even without the police report or Mrs. Ivchenko's acknowledgement of guilt.

**A.    Facts Included for Context Do Not Create Factual Disputes.**

The Motion to Dismiss contains a few references to facts in the police report to provide further detail for allegations that are only vaguely described in the SAC. For example, where the SAC describes that Mrs. Ivchenko "could not respond appropriately," the police report describes the inappropriate response. (See Doc. 36 at 3) These few facts are provided for context, and are not necessary for the resolution of the motion to dismiss. *See, e.g., S.B. by & through Kristina B. v. California Dep't of Educ.*, 327 F. Supp. 3d 1218, 1228 (E.D. Cal. 2018) (Court's ruling on

5

motion to dismiss contained a factual summary that "does not constitute a finding of fact with respect to any disputed matter; it is intended only to provide context for the parties' dispute.")

### B.      Exhibits May Be Considered Regarding Due Process and Conspiracy Claims.

The Court may consider both the acknowledgement of guilt and the police report for limited purposes, without resolving any fact issues or relying on hearsay within the documents. The analysis is similar to that done by the Court of Appeals in *Sprewell v. Golden State Warriors*, 266 F.3d 979, (9th Cir.), *opinion amended on denial of reh'g*, 275 F.3d 1187 (9th Cir. 2001).  In *Sprewell*, the complaint alleged that an arbitration award was invalid because the arbitrator failed to review of the facts and acted solely out of racial animus. *Id.* at 988. The plaintiff attached the arbitrator's decision to the complaint, however, and the Court saw that it contained "extensive factual allegations" and descriptions of the hundreds of pages of evidence and testimony of numerous witnesses.  It therefore found that the complaint failed to state a claim, as the Court was "not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint." *Id.*  The Court did not evaluate the accuracy of the decision, only that the decision making process had occurred.

Similarly, the police report and acknowledgement may be considered with regard to Plaintiff's due process and conspiracy claims against Officers Ryan and Dearing, in which Plaintiff alleges that the "supported" a lie and falsified a police report by claiming to have witnessed Mrs. Ivchenko's assault on Officer Treglown.  (Doc. 35 ¶11)  The Court does not need to pass on the issue of whether Mrs. Ivchenko actually assaulted Officer Treglown to dismiss any lie-related claims against Officers Ryan and Dearing.  The Court may look to the police report to determine that it contains no statements from Officer Ryan and that the only statement attributable to Officer Dearing is that he did not see the altercation.  (Doc. 36-1 at 9)  The Court may look to the county records and acknowledgment of guilt to see the matter was resolved without a hearing and without testimony from Officers Ryan and Dearing.  Because the issue is the overall lack of statements, rather than the content of those statements, the documents may be considered under *Sprewell*.

This limited consideration is distinguishable from the situation in *Lee v. City of Los Angeles*, 250 F.3d 668 (9th Cir. 2001). In *Lee*, the plaintiff contested the validity of a signed affidavit that was in the public record based, as she claimed that the signer lacked mental capacity to sign. *Id.* at 690. The *Lee* court held that despite the public record affidavit, fact issues regarding the truth of the hearsay statements within would allow the case to survive a Rule 12(b) motion. *Id.* The current situation is distinguishable because, for purposes of the due process and conspiracy claims, the Court need only look to see whether the statements are there, not whether they are true.

### C. Probable Cause To Arrest Established Without Acknowledgement of Guilt.

The motion to dismiss argues that the wrongful arrest claim is barred based on the existence of probable cause as established by the SAC, which admits to conduct giving rise to a misdemeanor for false 911 reporting. (Doc. 35 ¶¶7-8) Defendants withdraw their probable cause argument only insofar as it relates to Mrs. Ivchenko's guilt for the felony assault on Officer Treglown as established by her signed acknowledgement.[1] As discussed in section I above, the Response does not dispute that this conduct constitutes a misdemeanor under Arizona statute. *See* Ariz. Rev. Stat. § 13-2907.01. Therefore, even taking as true all allegations of the SAC, probable cause existed and no officer may be liable for any wrongful arrest claim. *See Atwater*, 532 U.S. at 354.

---

[1] This withdrawal is based on a June 26, 2020 decision from the Ninth Circuit Court of Appeals. *See Roberts v. City of Fairbanks*, 962 F.3d 1165, 1174 (9th Cir. 2020) (denying rehearing *en banc*). Long-established law in other circuits holds that participation in a pretrial diversion program operates as a conclusive bar to recovery for wrongful arrest in a 42 U.S.C. § 1983 claim under *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994). *See Roesch v. Otarola*, 980 F.2d 850, 852 (2d Cir. 1992), *Gilles v. Davis*, 427 F.3d 197, 209 (3d Cir. 2005). However, in *Roberts*, two dissenting judges noted that a recent Ninth Circuit decision regarding convictions vacated by settlement agreements would also operate to prevent application of *Heck* in cases like this one, which involve pretrial diversion programs. Defendants therefore withdraw this argument for purposes of this motion to dismiss, but reserve the right to raise arguments distinguishing *Roberts* or for a good faith extension of existing law should the case proceed.

## V.     Arrests May Occur Wherever Officers Are Lawfully Present.

The Response argues that the arrest was unlawful because there were no exigent circumstances to justify an in-home arrest without a warrant.  It argues that even if there were probable cause, Officer Treglown could not have arrested Mrs. Ivchenko because "no exigent circumstance existed" and "[t]here was no immediate threat to anyone's safety."  (Doc. 37 at 12)  Plaintiff's argument misinterprets the controlling case law on exigent circumstances by conflating the requirements for **entry** with the requirements for **arrest**.  Contra the Response, exigent circumstances were not required.  Officers were already lawfully in the home and therefore had the ability to arrest Mrs. Ivchenko as soon as they had probable cause.

Plaintiff relies on *Welsh v. Wisconsin*, 466 U.S. 740 (1984) to argue that in-home arrests always require exigent circumstances.  Plaintiff's reliance on *Welsh* is misplaced because the case analyzes only the criteria for entry into a home—which is not at issue here—not just the arrest itself.  *See id.* at 748-49.  Also, *Welsh* discusses the exigency exception to the warrant requirement—which is also not at issue here—but is silent on the emergency exception arising out of the community caretaking function.  *Welsh* also addresses a non-consensual entry, which, again, is not at issue here, where Mrs. Ivchenko invited the officers in.  *Id.* at fn.1.

While the SAC does not allege facts or legal theories that the initial entry was illegal, it does allege facts that would defeat an illegal entry claim if made.  The SAC admits that officers entered the home after they were called there by Mrs. Ivchenko herself.  Entry by consent is a valid warrantless entry under the Fourth Amendment.  *See Pike v. Hester*, 891 F.3d 1131, 1137 (9th Cir. 2018) (consent is an exception to the warrant requirement) (*citing Georgia v. Randolph*, 547 U.S. 103, 106 (2006)).  The SAC also alleges facts that establish a justified emergency assistance entry as community caretakers.  The SAC notes that Mrs. Ivchenko made a 911 call for help as a victim of violence, that her alleged assailant remained physically present in her

home, and that officers were told of her "dire intoxicated condition and high seizure risk."[2] (Doc. 35 ¶¶7-8, Doc. 37 at 4)  As the Court of Appeals noted in 2010:

> Under the emergency exception, an officer may enter a home without a warrant to investigate an emergency that threatens life or limb if the officer has objectively reasonable grounds to believe that an emergency exists and that his immediate response is needed. This exception is derived from police officers' community caretaking function, allowing them to enter a home when an emergency which threatens physical harm is presented.

*Espinosa v. City & Cty. of San Francisco*, 598 F.3d 528, 534 (9th Cir. 2010) (internal citations omitted).  Moreover, the Officers' actions in requesting that Mr. Ivchenko leave Mrs. Ivchenko's home were likewise permitted under that same exception as a matter of law.  "The role of a peace officer includes preventing violence and restoring order, not simply rendering first aid to casualties."  *Brigham City, Utah v. Stuart*, 547 U.S. 398, 406 (holding warrantless entry objectively reasonable where officer witnessed a juvenile punch an adult through window).

**VI.    Remaining Claims Should Be Dismissed.**

Based on the foregoing, Plaintiff cannot maintain any claim for excessive force, wrongful arrest, or violation of any Fourth Amendment rights regarding the in-home arrest.  The remaining claims of the SAC should likewise be dismissed, as the Response demonstrates that Plaintiff cannot maintain such claims as a matter of law.

As to Plaintiff's due process claim, Defendants requested dismissal because Plaintiff alleges only pre-arrest deprivations of liberty, relying on well-established precedent.  *See Albright v. Oliver*, 510 U.S. 266, 271-272 (1994); *see also Galbraith v. Cnty. of Santa Clara*, 307 F.3d at 1127, *and Armendariz v. Penman*, 75 F.3d 1311, 1318–19 (9th Cir. 1996) (both holding that Fourth Amendment, not Fourteenth, is correct source of pre-detention rights). While the SAC alleges facts regarding the harm Plaintiff claims to have suffered by going

---

[2] To the extent that Plaintiff may argue that the officers failed to adopt Mr. Ivchenko's belief about Mrs. Ivchenko's medical needs, it should be noted that the subjective belief of the officers on entry is immaterial to the emergency assistance exception.  *See Brigham City, Utah v. Stuart*, 547 U.S. 398, 405 (2006) (It "does not matter here—even if their subjective motives could be so neatly unraveled—whether the officers entered the kitchen to arrest respondents and gather evidence against them or to assist the injured and prevent further violence.")

9

through withdrawal in jail, these facts cannot be attributed to Defendants as they did not have custody of Plaintiff after she was taken to the county jail. The Response cites to *Ingraham v. Wright*, 430 U.S. 651 (1977) in support of its due process claim, arguing that Plaintiff need only allege that she was deprived of liberty and subjected to punishment. *Ingraham* relates to corporal punishment in a school setting and is inapplicable to the present case, particularly in light of more recent and specific case law holding that the Fourth Amendment is the sole source of pre-detention rights for criminal suspects.

As to Plaintiff's privacy claim, the Response claims that Plaintiff has a cause of action for violation of "a privacy right to seek treatment at a detox center," relying on *Rakas v. Illinois*, 439 U.S. 128 (1978). *Rakas* merely applies the Fourth Amendment to entry into a home and the various warrant requirements and exceptions. *See id.* To the extent that Plaintiff has or could allege a Fourth Amendment privacy claim, the contours of that right are set forth in section V above, which demonstrates that the officers lawfully entered Mrs. Ivchenko's home at her request and under a valid emergency exception. There is no "privacy" right under federal constitutional law to be taken to a medical clinic when a suspect prefers that to arrest.

As to the remainder of Plaintiff's claims—failure to intervene, conspiracy, disability discrimination under the ADA/RA, *Monell* claims, and punitive damages—all are contingent on Plaintiff's ability to maintain a valid Fourth Amendment claim for the officers' actual conduct on the date of the incident: that is, the arrest. None of the case law cited by Plaintiff detracts from this conclusion. The Response's recitation of facts regarding the elements of these specific claims fails to state any claim or resolve any legal issues raised in the Motion to Dismiss. In the absence of a violation of the Fourth Amendment for wrongful arrest or excessive use of force, Plaintiff cannot maintain any claim against any defendant. As she cannot do so based on her own complaint and as a matter of law, all of the remaining claims should be dismissed.

## VII. Conclusion

For the foregoing reasons, Defendants Treglown, Dearing, Ryan, and City of Scottsdale respectfully request that the Court dismiss Plaintiff's SAC.

DATED this 31st day of August, 2020.

**SCOTTSDALE CITY ATTORNEY'S OFFICE**

*/s/ Diana Day*
Diana Day, Assistant City Attorney
3939 North Drinkwater Boulevard
Scottsdale, Arizona 85251
Attorneys for City of Scottsdale, Officer Treglown, Detective Ryan, and Officer Dearing

**CERTIFICATE OF SERVICE**

I hereby certify that on this 31st day of August, 2020, I electronically transmitted the attached document to the Clerk's office using the CM/ECF System for filing and electronic service to:

Elizabeth D. Tate
ELIZABETH D. TATE ATTORNEY AT LAW
2953 N. 48th Street
Phoenix, AZ 85016
attorneyelizabethtate@yahoo.com
Attorneys for Plaintiff

/s/ Diana Day

An Employee of the Scottsdale City Attorney's Office