1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

KAB

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Renee Ivchenko,<br><br>                Plaintiff,<br><br>v.<br><br>City of Scottsdale, et al.,<br><br>                Defendants. | No.   CV 19-05834-PHX-ROS (DMF)<br><br>**ORDER** |

Plaintiff Renee Ivchenko, who is represented by counsel, brought this civil rights action pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 12132. (Doc. 35.) Pending before the Court is Defendants' Motion to Dismiss (Doc. 36), which Plaintiff opposes (Doc. 37).

**I.      Second Amended Complaint**

In her Second Amended Complaint, Plaintiff relevantly alleges as follows. During the events giving rise to Plaintiff's allegations, Plaintiff was a married woman living with her husband, Andrew. (Doc. 35 ¶ 2.) Plaintiff is an alcoholic and suffers from seizures; these conditions affect her thinking and concentration. (*Id.*) On April 21, 2018, Plaintiff was severely intoxicated, and Andrew poured her vodka down the kitchen sink drain. (*Id.* ¶ 7.) Plaintiff became upset and called 9-1-1 to report domestic violence. (*Id.* ¶ 7.)

Defendants Treglown, Ryan, and Dearing are City of Scottsdale police officers and responded to Plaintiff's 9-1-1 call with their supervisor, Sergeant Michael. (Doc. 35 ¶¶ 3-5, 7.) These officers knew Plaintiff is an alcoholic based on four other interactions with her in the preceding ten months. (*Id.*) The officers determined that Plaintiff's claim of

1    domestic violence was baseless.  (*Id.* ¶ 8.)  Andrew told the officers that Plaintiff had a

2    high seizure risk and history, said she had not harmed him, and requested that she be taken

3    to a hospital or detox facility.  (*Id.*)

4         The officers told Andrew to leave the home and Andrew reluctantly prepared to

5    leave the home.  (*Id.* ¶ 9.)  Plaintiff asked permission to say goodbye to Andrew, but

6    Defendant Treglown denied the request and "continuously agitated" Plaintiff.  (*Id.*)

7    Plaintiff attempted to shake Treglown's hand, but Treglown refused the handshake and

8    pushed Plaintiff.  (*Id.*)  Treglown told Plaintiff not to argue with him and when Plaintiff

9    continued to argue, Treglown pushed Plaintiff a second time.  (*Id.*)  The other officers made

10   no attempt to intervene.  (*Id.*)

11        Plaintiff became agitated and berated Treglown and Treglown screamed "calm

12   down" and then tried to detain Plaintiff.  (*Id.* ¶ 10.)  As Plaintiff attempted to move away

13   from Treglown, Treglown falsely asserted that Plaintiff had assaulted him.  (*Id.*)  Plaintiff

14   said to Treglown, "You calm down," and Treglown grabbed her by the right arm, Ryan

15   grabbed her by the left arm, and Plaintiff was handcuffed.  (*Id.*)  Plaintiff asked why she

16   was being arrested and denied pushing Treglown.  (*Id.*)  The officers led Plaintiff out of

17   her home in her bare feet and placed her in a squad car.  (*Id.*)  On the way to the jail,

18   Plaintiff experienced blackouts and lost recollection of the events that led to her arrest.  (*Id.*

19   ¶ 11.)  At the Maricopa County Jail, Plaintiff was booked on charges of aggravated assault

20   on a peace officer and two other misdemeanors that were not ultimately charged.  (*Id.* ¶

21   10.)  Plaintiff spent the night in the jail without socks or shoes and "feared for her life while

22   suffering from dangerous alcohol withdrawal symptoms that had led to seizures in the

23   past."  (*Id.* ¶ 11.)  Plaintiff was released from jail early the following morning after her

24   arraignment.  (*Id.*)

25        Plaintiff entered into a Felony Pretrial Intervention Program on May 15, 2018 even

26   though she never assaulted Treglown; the charge against her was dismissed on September

27   25, 2018.  (*Id.* ¶ 11.)

28   . . . .

1          In Count One, Plaintiff asserts claims pursuant to 42 U.S.C. § 1983 for "unlawful
2   arrest, excessive force, failure to intervene, and conspiracy in violation of the Fourth and
3   Fourteenth Amendments" against the City of Scottsdale, Treglown, Ryan, and Dearing.[1]
4   In Count Two, Plaintiff alleges violations of "42 U.S.C. § 12132 and failure to train as to
5   the City of Scottsdale."  In Count Two, Plaintiff alleges that she was a qualified individual
6   with the disability of alcoholism with a history of seizures and was subjected to disability
7   discrimination by the Defendant officers "who had tired of assisting Plaintiff because she
8   is an alcoholic."  (Doc. 35 at 11.)  Plaintiff asserts that Defendant officers "could have
9   made reasonable accommodations of permitting Plaintiff to stay in her home with her
10  husband after she made a baseless [9-1-1] call and/or invoking involuntary commitment as
11  requested by her husband."  (*Id.*)  Plaintiff alleges that the officers arrested Plaintiff
12  "without probable cause" because of her disability and not because she had committed any
13  crimes.  (*Id.*)  Plaintiff asserts that because the Defendant officers knew about Plaintiff's
14  disability and did not reasonably accommodate her, the City of Scottsdale is liable.  (*Id.* at
15  13.)  Plaintiff alleges that the City of Scottsdale failed to properly train their police officers
16  for peaceful encounters with disabled persons, and such failure resulted in discrimination
17  against Plaintiff."  (*Id.*)

18          Defendants move to dismiss all claims in the Second Amended Complaint.

19  **II.      Federal Rule of Civil Procedure 12(b)(6)**

20          A pleading must contain a "short and plain statement of the claim *showing* that the
21  pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2) (emphasis added).  While Rule 8 does
22  not demand detailed factual allegations, "it demands more than an unadorned, the-
23  defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678
24  (2009).  "Threadbare recitals of the elements of a cause of action, supported by mere
25  conclusory statements, do not suffice."  *Id.*

26

27
28          [1] Because Plaintiff included multiple claims in Count One, it is difficult to determine
    the exact nature of each claim and who each claim is asserted against.  Counsel is cautioned
    against this practice in the future.  *See* Fed. R. Civ. P. 10(b).

1    "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a

2    claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atlantic Corp. v. Twombly*,

3    550 U.S. 544, 570 (2007)).  A claim is plausible "when the plaintiff pleads factual content

4    that allows the court to draw the reasonable inference that the defendant is liable for the

5    misconduct alleged."  *Id.*  "Determining whether a complaint states a plausible claim for

6    relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial

7    experience and common sense."  *Id.* at 679.  Thus, although a plaintiff's specific factual

8    allegations may be consistent with a constitutional claim, a court must assess whether there

9    are other "more likely explanations" for a defendant's conduct.  *Id.* at 681.

10    As a general rule, when deciding a Rule 12(b)(6) motion, the court looks only to the

11    face of the complaint and documents attached thereto.  *Van Buskirk v. Cable News*

12    *Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002); *Hal Roach Studios, Inc. v. Richard Feiner*

13    *& Co., Inc.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990).  If a court considers evidence outside

14    the pleading, it must convert the Rule 12(b)(6) motion into a Rule 56 motion for summary

15    judgment.  *United States v. Ritchie*, 342 F.3d 903, 907–08 (9th Cir. 2003).  A court may,

16    however, consider documents incorporated by reference in the complaint or matters of

17    judicial notice without converting the motion to dismiss into a motion for summary

18    judgment.  *Id.*

19    **III.    Judicial Notice**

20    Defendants request that the Court take judicial notice of the police reports of the

21    incident, county records in Plaintiff's criminal case, and temperature and sunset data.

22    As relevant here, pursuant to Rule 201 of the Federal Rules of Evidence, a Court

23    may take judicial notice of a "fact that is not subject to reasonable dispute because it . . .

24    can be accurately and readily determined from sources whose accuracy may not be

25    reasonably questioned."  Fed. R. Civ. P. 201(b)(2).  While a Court may take judicial notice

26    of "matters of public record," it may not take judicial notice of facts that may be subject to

27    reasonable dispute."  *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001).

28    Defendants do not explain why each "fact" they assert is subject to judicial notice.

- 4 -

1   Particularly concerning is Defendants reliance on the officers' versions of events as set

2   forth in the police reports.  These "facts" simply cannot be considered at the motion-to-

3   dismiss-stage simply because they were inserted into a police report, and the facts do not

4   meet the requirements for judicial notice.  In their Reply, Defendants assert that if the Court

5   does not find judicial notice appropriate, the Court should simply convert the Motion to

6   Dismiss into a Motion for Summary Judgment.  Conversion of the Motion to Dismiss is

7   not appropriate under these circumstances and at this stage of the proceedings.

8   Accordingly, the request for judicial notice will be denied as to the content of the police

9   reports.

10   To the extent Defendants argue that other individual facts included in the criminal

11   proceedings or temperature and sunset data are subject to judicial notice, the Court will

12   discuss whether judicial notice is appropriate as to specific facts in the Discussion section

13   below.

14   **IV.    Discussion**

15   **A.    Fourth Amendment Unlawful Arrest**

16   Defendants argue that the false arrest claim must be dismissed because the

17   allegations of the Second Amended Complaint establish that Plaintiff's 9-1-1 call was false,

18   and under Arizona Revised Statutes section 13-2907.01, a "false, fraudulent or unfounded

19   report or statement" to 9-1-1 is a Class 1 misdemeanor, and as a result, Defendants had

20   probable cause to arrest Plaintiff for a violation of Arizona Revised Statutes section 13-

21   2907.01 regardless of whether the assault charge was fabricated.[2]

22

23   [2] Defendants also argue that because Plaintiff admitted to assaulting Officer

24   Treglown in a consent executed to participate in a Felony Pretrial Intervention Program,
     which Defendants attach to the Motion to Dismiss (Doc. 36-1 at 13), Defendants had

25   probable cause to arrest Plaintiff for assault on Officer Treglown.  The source of the consent
     is unclear, but even assuming that the consent was filed in Plaintiff's criminal case, the

26   Court can only take judicial notice of the fact that Plaintiff signed the consent and that she
     confessed to the assault, but the Court cannot take judicial notice of the truth of the

27   confession.  The document is certainly relevant to Plaintiff's credibility, but the Court

28   cannot consider credibility when deciding a Motion to Dismiss.  Accordingly, the Court
     cannot take judicial notice of the consent both because it is unclear where the consent is

1        In Response, Plaintiff argues that Defendants may not establish probable cause or

2   exigent circumstances for Plaintiff's felony arrest in her home without a warrant; Plaintiff

3   asserts that "[e]ven if Defendants may establish probable cause, no exigent circumstance

4   existed for [Plaintiff's] arrest because there was no immediate threat to anyone's safety"

5   and the "community caretaking has no application to an in-home arrest."  (Doc. 37 at 12-

6   13.)

7        In Reply, Defendants assert that Plaintiff concedes that Plaintiff committed a crime

8   prior to her arrest and for Fourth Amendment purposes, an officer may lawfully arrest a

9   suspect for even a very minor criminal offense.   Defendants assert that Plaintiff's

10  contention that there was an additional warrant requirement based on the location of the

11  arrest is incorrect because Plaintiff's argument misinterprets the controlling case law on

12  exigent circumstances by conflating the requirements for entry with the requirements for

13  arrest.  Defendants assert that while Plaintiff does not allege facts or legal theories that the

14  initial entry was illegal, she does allege facts that would defeat an illegal entry claim if

15  made because in the Second Amended Complaint, Plaintiff admits that officers entered the

16  home after they were called there by Plaintiff and entry by consent is a valid warrantless

17  entry under the Fourth Amendment.

18       The Fourth Amendment requires an arrest to be supported by probable cause.

19  *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001).  "Probable cause to arrest exists

20  when officers have knowledge or reasonably trustworthy information sufficient to lead a

21  person of reasonable caution to believe an offense has been or is being committed by the

22  person being arrested."  *United States v. Lopez*, 482 F.3d 1067, 1072 (9th Cir. 2007).

23       Although Plaintiff argues a new legal theory regarding warrantless entry into her

24  home, Plaintiff did not allege any facts that would state a claim based on warrantless entry

25  into her home in the Second Amended Complaint.  Simply alleging "false arrest" while

26  Plaintiff was inside the home is conclusory and is not sufficient to state a claim under these

27

28  kept within the public record and because the Court cannot take judicial notice of the "fact"
    of the truth of Plaintiff's confession.

1   circumstances because Plaintiff does not make any allegations regarding the officers'

2   entering her home, except that she alleges that she called 9-1-1 and reported domestic

3   violence.  Accordingly, Plaintiff's allegations do not support that an arrest occurred inside

4   her home in the absence of consent or exigent circumstances.  *See, e.g.*, *United States v.*

5   *Vaneaton*, 49 F.3d 1423, 1425 (9th Cir. 1995) (arrest cannot occur inside a private dwelling

6   absent consent or exigent circumstances).

7        Here, based on the allegations in the Second Amended Complaint, Defendants had

8   probable cause to arrest Plaintiff for the misdemeanor of "false reporting to law

9   enforcement agencies" in violation of Arizona Revised Statutes section 13-2907.01.  The

10  Constitution does not require that Plaintiff be charged with the crime on which there was

11  probable cause to arrest her.  *See, e.g.*, *Blankenhorn v. City of Orange*, 485 F.3d 463, 473

12  (9th Cir. 2007) ("It doesn't matter for present purposes if [Plaintiff] was charged with

13  a different crime than that for which he was arrested. . . .  Probable cause need only exist

14  as to any offense that could be charged under the circumstances."); *Barry v. Fowler*, 902

15  F.2d 770, 773 (9th Cir. 1990) (where Plaintiff "was arrested only once, albeit for two

16  different crimes," Plaintiff's "single 'seizure' was not unconstitutional, even if [the police

17  officer] lacked probable cause to arrest her for public drunkenness.")  Plaintiff makes no

18  argument to the contrary and does not respond to Defendants' argument that there was

19  probable cause to arrest Plaintiff for this misdemeanor.[3]

20       Accordingly, Defendants' Motion to Dismiss Plaintiff's Fourth Amendment false

21  arrest claim will be granted.

22       **B.**    **Fourth Amendment Excessive Force and Failure to Intervene**

23       Defendants argue that even taking the allegations in the Second Amended

24  Complaint as true, Plaintiff has failed to state a claim for excessive force based on the

25

26      [3] Plaintiff was charged with Aggravated Assault of an officer (minor or no injury)
    in violation of Arizona Revised Statutes section 13-1204(A)(8)(A); Assault, Touched to

27  Injure in violation of Arizona Revised Statutes section 13-1203(A)(3); and Disorderly
    Conduct in violation of Arizona Revised Statutes section 13-2904(A)(1). (Doc. 36-1 at 3).

28  The charges contained in the police report are facts properly subject to judicial notice and
    are not disputed by the Parties.  *See* Fed. R. Evid. 201(b)(2).

1  alleged 1) two "pushes" by Officer Treglown prior to the arrest, 2) the arrest itself, in which

2  Officer Treglown grabbed one arm and Officer Ryan grabbed the other, and 3) being

3  walked to the car without shoes at sunset on a cool day.  Defendants assert that Plaintiff

4  alleges no physical injury, just "emotional distress and damages," alleges no force by

5  Officer Dearing, and alleges only that Officer Ryan grabbed Plaintiff's right arm to assist

6  Officer Treglown in the arrest.

7  Plaintiff does not respond to Defendants' arguments regarding excessive force; the

8  only reference to excessive force in the Response is an assertion that the Court should not

9  consider the facts set forth in the police reports in ruling on the Motion to Dismiss.  (Doc.

10  37 at 9.)  As discussed above, the Court is not considering the officers' version of events

11  in the police reports in ruling on the Motion to Dismiss.  In Response to Defendants'

12  qualified immunity argument, Plaintiff appears to conflate a claim for "failure to intervene"

13  in excessive force with a false arrest claim arguing that:

> The Fourth and Fourteenth Amendment Constitutional protection warrantless [sic] in-home arrests was in effect when the claim in the instant case arose. *Welsh v. Wis*, 466 U.S. 740, 104 S.Ct. 2091, 80 L. Ed 732 (1983). These constitutional protections from unlawful arrests have been specifically applied in cases where police have been invited into a home and engage in some misconduct. The SAC alleges that Officer Treglown engaged in misconduct by fabricating probable cause. Each Defendant police officer knew that it was not reasonable to enter the Ivchenko home, fabricate probable cause to arrest Mrs. Ivchenko in her home.

(Doc. 37 at 13.)  This argument fundamentally misconstrues Defendants' argument for dismissal and leaves the Court with no substantive response to Defendants' arguments on the excessive force claim.

A claim that law enforcement officers have used excessive force in the course of an arrest should be analyzed under the Fourth Amendment and its "reasonableness" standard. *Graham v. Connor*, 490 U.S. 386, 395 (1989).  The reasonableness of the use of force "must be judged from the perspective of a reasonable officer at the scene, rather than with the 20/20 vision of hindsight."  *Id.* at 396.  When determining whether the totality of the

1    circumstances justifies the degree of force, the court must consider "the facts and

2    circumstances of each particular case, including the severity of the crime at issue, whether

3    the suspect poses an immediate threat to the safety of the officers or others, and whether

4    he is actively resisting arrest or attempting to evade arrest by flight." *Id.* The inquiry is

5    "whether the officers' actions are 'objectively reasonable' in light of the facts and

6    circumstances confronting them, without regard to their underlying intent or motivation."

7    *Id.* at 397 (citations omitted). Not every push or shove, even if it may later seem

8    unnecessary, violates the Fourth Amendment. *Forrester v. City of San Diego*, 25 F.3d 804,

9    810 (9th Cir. 1994).

10    There are no allegations that Officers Dearing or Ryan used excessive force or failed

11    to intervene in the use of excessive force. Plaintiff makes no allegations that Officer

12    Dearing used any force and Plaintiff alleges only that Defendant Ryan grabbed her arm in

13    order to handcuff her. There is nothing alleged about the way that Defendant Ryan grabbed

14    Plaintiff's arm that would lead the Court to conclude that grabbing her arm in order to

15    handcuff her was unreasonable under the circumstances.

16    Likewise, Plaintiff does not allege that Defendants Dearing or Ryan were in close

17    proximity to Defendant Treglown when he pushed her on two occasions or that they could

18    have anticipated Treglown's actions to intervene in the use of force. In Response to the

19    Motion to Dismiss, Plaintiff appears to assert that her "failure to intervene" claim against

20    Defendants Ryan and Dearing is based on their "failure to intervene" in Plaintiff's arrest

21    and not on their "failure to intervene" in the alleged use of excessive force. Because of the

22    way Plaintiff pleaded her constitutional claims in the Second Amended Complaint, it is

23    impossible to determine the factual basis for the individual claims. For all of the foregoing

24    reasons, Plaintiff has not stated an excessive force claim or a claim for failure to intervene

25    against Defendants Dearing and Ryan, and those claims will be dismissed.

26    As to the excessive force claim against Defendant Treglown, Plaintiff alleges that

27    she wanted to say goodbye to her husband and began to argue with Defendant Treglown

28    because Treglown ordered her to stay away from her husband, and Plaintiff then tried to

1    shake Treglown's hand, which resulted in him pushing her once and then she "continued

2    to argue" with Officer Treglown resulting in him pushing her a second time.   Under

3    Plaintiff's allegations, she was not complying with Treglown's orders to stay away from

4    her husband and was arguing with him.   Under these alleged facts, the Court cannot

5    conclude that the minimal amount of force used was unreasonable under the circumstances.

6         Likewise, with regard to Plaintiff's allegation that she was walked to the police car

7    barefoot, there are no allegations suggesting that this was excessive force, such as facts

8    suggesting the sidewalk or pavement she was walking on was excessively hot,[4] or that she

9    was forced to walk over sharp rocks.

10        For all of the foregoing reasons, Plaintiff has failed to state an excessive force claim

11   or a claim for failure to intervene in excessive force against any of the Defendants, and

12   those claims will be dismissed.

13        **C.    Privacy**

14        Defendants assert that the privacy claim should be dismissed for failure to state a

15   claim because the claim is insufficiently pled and because the facts alleged in the Second

16   Amended Complaint demonstrate that officers had the legal right to be present in Plaintiff's

17   home to investigate the report of a crime and to ensure the safety of the fighting spouses—

18   one intoxicated—from themselves and each other as part of the officers' community

19   caretaking function.

20        In Response, Plaintiff argues that she alleges that her husband wanted her taken to

21   a "detox center," such as Community Bridges, and Defendants interfered and took away

22   her privacy right to seek treatment at a detox center and instead took her to jail.

23        In Reply, Defendants assert that the officers lawfully entered Plaintiff's home at her

24   request and under a valid emergency exception and there is no "privacy" right under federal

25   constitutional law to be taken to a medical clinic when a suspect prefers that to arrest.

26   

27   

28        [4]   Defendants request that the Court take judicial notice of the weather to
     demonstrate that the sidewalk would not have been hot, but the Court finds this unnecessary
     given Plaintiff's allegations.

1    Plaintiff has failed to state a claim upon which relief may be granted based on a

2    constitutional right to "privacy."  Plaintiff does not point to any case law suggesting that

3    she has a constitutional right to be taken to a detox center rather than being arrested.

4    Accordingly, Plaintiff's § 1983 privacy claim will be dismissed.

5    **D.    Due Process**

6        Defendants argue that the due process claim should be dismissed because any pre-

7    arrest deprivation of liberty would be encompassed by the Fourth Amendment, not the

8    Fourteenth Amendment, and Plaintiff has failed to state a claim based on any post-

9    detention process.

10       In Response, Plaintiff alleges that she stated a due process claim because she "spent

11   the night in jail without socks or shoes and feared for her life while suffering from

12   dangerous alcohol withdrawal symptoms that had led to seizures in the past."  (Doc. 37 at

13   5-6.)  In Reply, Defendants assert that any harm Plaintiff claims to have suffered by going

14   through withdrawal in jail cannot be attributed to Defendants as they did not have custody

15   of Plaintiff after she was taken to the county jail.

16       It is not clear from the allegations in the Second Amended Complaint the basis of

17   Plaintiff's due process claim.  In Response to the Motion to Dismiss, Plaintiff asserts that

18   the basis of the due process claim is the conditions of confinement Plaintiff suffered while

19   in jail.  Plaintiff does not allege any facts establishing that Defendants were responsible for

20   the conditions of the jail or any medical attention that Plaintiff was denied while in the

21   custody of the jail.  Accordingly, Plaintiff has failed to state a due process claim and that

22   claim will be dismissed.

23   **E.    Conspiracy**

24       Defendants assert that the conspiracy claim is entirely conclusory and therefore fails

25   to state a claim.

26       In Response, Plaintiff asserts that she alleged that "[e]ach Defendant Officer had

27   knowledge of Officer Treglown['s] plan to arrest [Plaintiff].  Two grabbed her by the arm.

28   The officer guarded the door to the home so no one could leave or enter.  These actions

1   establish a meeting of the minds sufficient for Plaintiff's conspiracy to violate her Fourth

2   Amendment rights claim to survive." (Doc. 37 at 11.)

3        "To establish liability for a conspiracy in a § 1983 case, a plaintiff must demonstrate

4   the existence of an agreement or meeting of the minds to violate constitutional rights."

5   *Crowe v. Cnty. of San Diego*, 608 F.3d 406, 440 (9th Cir. 2010) (internal citation omitted).

6        Because Plaintiff has failed to state a claim for false arrest, Plaintiff has also failed

7   to state a claim based on the Defendant officers' alleged conspiracy to arrest her in violation

8   of her constitutional rights, and her conspiracy claim will be dismissed.

9        **F.      Americans with Disabilities Act (ADA)/Rehabilitation Act (RA)**

10       Defendants assert that Plaintiffs claim for disability discrimination under the

11  ADA/RA relies on a legally defective premise and therefore fails to state a claim.

12  Defendants assert that because Plaintiff committed a crime, the officers were allowed to

13  arrest her because a "reasonable accommodation" does not prohibit an officer from

14  arresting a disabled person.  Defendants assert that "while [Arizona Revised Statutes

15  section 36-2026] does provide officers with the discretionary power to detain people for

16  remand to an 'approved alcoholism reception center' for their protection, doing so is

17  fundamentally different from an arrest, which involves taking someone to jail for a

18  penological purpose . . . and [a]lthough [Plaintiff's husband] made the request to officers

19  on scene, there are good policy reasons not to commit someone to a hospital facility on the

20  request of a husband who is an alleged victim and alleged perpetrator of recent abuse."

21  (Doc. 36 at 14.)  Defendants further argue that the discrimination claim fails to meet the

22  requirement of but-for cause because Plaintiff was not arrested for being an alcoholic;

23  rather, she was arrested for committing crimes on which there was probable cause to arrest

24  her.

25       In Response, Plaintiff asserts that she "may plausibly allege disability

26  discrimination by providing the fact that she was wrongfully arrested by the misperceptions

27  of the Defendant Officers and/or that she was denied a reasonable accommodation." (Doc.

28  37 at 11.)  Plaintiff asserts that her allegations that she was intoxicated and could not

1    understand and follow Defendant Treglown's directives, which led to Defendant Treglown
2    "fabricat[ing] probable cause," and that her husband asked for a reasonable
3    accommodation to take Plaintiff to a detox facility are sufficient to state a claim under the
4    ADA/RA.  (*Id.* at 11-12.)

5         Title II of the ADA commands that "no qualified individual with a disability shall,
6    by reason of such disability, be excluded from participation in or be denied the benefits of
7    the services, programs, or activities of a public entity, or be subjected to discrimination by
8    any such entity." 42 U.S.C. § 12132.   The United States Supreme Court has not yet
9    decided whether 42 U.S.C. § 12132 applies to arrests or whether a public entity can be
10   liable for damages under Title II for an arrest made by its police officers. *City and Cnty..*
11   *of San Francisco, Calif. v. Sheehan*, 575 U.S. 600, 607-608 (2015) ("whether the statutory
12   language . . . applies to arrests is an important question that would benefit from briefing
13   and adversary presentation. . . . As a result we do not think that it would be prudent to
14   decide the question in this case.").   Nonetheless, the Ninth Circuit Court of Appeals has
15   held that 42 U.S.C. § 12132 does apply to arrests. *Vos v. City of Newport Beach*, 892 F.3d
16   1024, 1036 (9th Cir. 2018).  Moreover, "[o]nly public entities are liable under Title II."
17   *Sheehan*, 575 U.S. at 609.

18        "Courts have recognized at least two types of Title II claims applicable to arrests:
19   (1) wrongful arrest, where police wrongly arrest someone with a disability because they
20   misperceive the effects of that disability as criminal activity; and (2) reasonable
21   accommodation, where, although police properly investigate and arrest a person with a
22   disability for a crime unrelated to that disability, they fail to reasonably accommodate the
23   person's disability in the course of investigation or arrest, causing the person to suffer
24   greater injury or indignity in that process than other arrestees." *Sheehan v. City and Cnty.*
25   *of San Francisco*, 743 F.3d 1211, 1232 (9th Cir. 2014), *rev'd in part, cert. dismissed in*
26   *part sub nom. City & Cnty. of San Francisco, Calif. v. Sheehan*, 575 U.S. 600 (2015). "In
27   a Title II claim grounded in a public entity's alleged failure to provide a reasonable
28   accommodation under  28 C.F.R. § 35.130(b)(7), the plaintiff bears the initial burden of

1    producing evidence of the existence of a reasonable accommodation." *Id.* at 1232-33. "A

2    public entity may defeat a reasonable accommodation claim by showing "that making the

3    modifications would fundamentally alter the nature of the service, program, or activity."

4    *Id.* (quoting 28 C.F.R. § 35.130(b)(7)).

5            Plaintiff argues that the Defendant officers could have reasonably accommodated

6    her disability by exercising their discretionary power to take her to a rehabilitation facility.

7    Although Plaintiff alleges that Defendants could have sent her to a rehabilitation facility

8    rather than arresting her, Defendants assert that taking someone to a rehabilitation facility

9    is fundamentally different from the penological purpose of arrest.  The Court agrees.

10   Plaintiff does not allege that there was a reasonable accommodation she could have been

11   provided with regard to the arrest itself and does not allege facts showing that she was

12   caused "to suffer greater injury or indignity in that process than other arrestees."  As noted

13   above, Plaintiff has pleaded facts showing that Defendants had probable cause to arrest

14   her.  Although it may have been preferable for Plaintiff to be taken to a rehabilitation

15   facility, the penological purpose of arrest is not served by bringing Plaintiff to a

16   rehabilitation facility and Defendants were not required under the ADA or RA to

17   accommodate Plaintiff by not arresting her when they had probable cause to do so.

18   Accordingly, Plaintiff's claim pursuant to 42 U.S.C. § 12132 will be dismissed for failure

19   to state a claim upon which relief may be granted.

20           **G.    Failure to Train**

21           Defendants assert that Plaintiff's allegation that the City failed to train the

22   Defendant officers is conclusory and fails to meet minimal pleading standards because

23   Plaintiff alleges a single negative experience with the Scottsdale police, and does not assert

24   facts establishing that a need for training was so obvious that it could be attributed as a

25   policy of the City.

26           In Response, Plaintiff alleges that the Court should not dismiss this claim "without

27   the benefit of discovery to discover citizens that have been arrested in their homes."  (Doc.

28   37 at 14.)

1     To state a claim against a municipality under § 1983, a plaintiff must allege facts to

2     support that her constitutional rights were violated pursuant to a policy, practice, or custom

3     of the municipality.  *Cortez v. Cnty. of Los Angeles*, 294 F.3d 1186, 1188 (9th Cir. 2001)

4     (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)).

5     Thus, a municipality may not be sued solely because an injury was inflicted by one

6     of its employees or agents.  *Long v. Cnty. of Los Angeles,* 442 F.3d 1178, 1185 (9th Cir.

7     2006).  Therefore, a § 1983 claim against a municipal defendant "cannot succeed as a

8     matter of law" unless a plaintiff: (1) contends that the municipal defendant maintains a

9     policy or custom pertinent to the plaintiff's alleged injury; and (2) explains how such policy

10    or custom caused the plaintiff's injury.  *Sadoski v. Mosley*, 435 F.3d 1076, 1080 (9th Cir.

11    2006) (affirming dismissal of a municipal defendant pursuant to Fed. R. Civ. P. 12(b)(6)).

12    A "decision not to train certain employees about their legal duty to avoid violating

13    citizens' rights may rise to the level of an official government policy for purposes of

14    § 1983."  *Connick v. Thompson*, 563 U.S. 51, 60 (2011).  To support a *Monell* claim for

15    failure to train under § 1983, a plaintiff must allege facts demonstrating that the local

16    government's failure to train amounts to "deliberate indifference to the rights of persons

17    with whom the [untrained employees] come into contact."  *Connick*, 563 U.S. at 61 (citing

18    *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)).

19    Here, because Plaintiff has not successfully alleged an underlying constitutional

20    violation, she has likewise failed to allege a claim based on failure to train.  Accordingly,

21    Plaintiff's claim for failure to train will be dismissed.

22    **V.     Leave to Amend**

23    Plaintiff requests leave to amend her Second Amended Complaint if the Court finds

24    that she has failed to state a claim upon which relief may be granted.  Plaintiff does not

25    specify any facts that she could allege that would allow her to state a claim upon which

26    relief may be granted. Moreover, Defendants made a good faith attempt to confer with

27    Plaintiff pursuant to LRCiv 12.1(c) (Doc. 36-2 at 1-2) prior to filing their Motion to

28    Dismiss, and Plaintiff refused to correct the deficiencies in her Second Amended

1   Complaint.  Further, the Court's Scheduling Order set the deadline to amend the pleadings

2   as July 27, 2020 and Plaintiff makes no argument regarding the requirements of amending

3   the Scheduling Order under Rule 16 of the Federal Rules of Civil Procedure.  *See* Fed. R.

4   Civ. P. 16(b)(4); *e.g.*, *Noyes v. Kelly Servs.,* 488 F.3d 1163, 1174 n.6 (9th Cir. 2007).

5   Accordingly, Plaintiff's request for leave to amend her Second Amended Complaint will

6   be denied.

7   **IT IS ORDERED:**

8         (1)    The reference to the Magistrate Judge is **withdrawn** as to Defendants'

9   Motion to Dismiss (Doc. 36).

10        (2)    Defendants' Motion to Dismiss (Doc. 36) is **granted**, and this action is

11  dismissed for failure to state a claim upon which relief may be granted.

12        (3)    The Clerk of the Court must enter judgment accordingly.

13        Dated this 24th day of November, 2020.

14

15

16                                              Honorable Roslyn O. Silver
                                                Senior United States District Judge
17

18

19

20

21

22

23

24

25

26

27

28

- 16 -